COMMONWEALTH of Pennsylvania, Appellee

v.

**Gerald A. SANDUSKY, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 17, 2013.

Filed Oct. 2, 2013.

Norris E. Gelman, Philadelphia, for appellant.

\* Retired Senior Judge assigned to the Superior Court.

1. The Commonwealth contends that Sandusky waived this issue as he did not object to the trial court's failure to give the charge

James P. Barker, Office of the Attorney General, Harrisburg, for Commonwealth, appellee.

BEFORE: PANELLA, J., MUNDY, J., and PLATT, J.*

**OPINION BY PANELLA, J.:**

Appellant, Gerald A. Sandusky, appeals from the judgment of sentence entered October 9, 2012, in the Court of Common Pleas of Centre County. We affirm.

A jury convicted Sandusky of 45 counts relating to the sexual abuse of young boys. The eight victims, now all adults, testified in detail about the sexual depravity they suffered as young boys at Sandusky's hands. Combined, the abuse spanned a thirteen-year period, 1995 to 2008. Sandusky met all the victims through a nonprofit he founded called The Second Mile, an organization with the declared purpose of serving Pennsylvania's underprivileged and at-risk youth.

Immediately prior to sentencing, the trial court held a hearing at which time it determined that Sandusky was a sexually violent predator. The trial court then imposed an aggregate period of incarceration of thirty to ninety years. Sandusky filed post-sentence motions, which the trial court denied after a hearing. This timely appeal followed.

■ Sandusky first argues that the trial court erred in refusing to give the jury the prompt complaint instruction found at Section 4.13A of the Pennsylvania Suggested Standard Criminal Jury Instructions.[1]

before the jury retired to deliberate. *See* Commonwealth's Brief, at 34. At the charge conference held in chambers, Sandusky requested that the trial court instruct the jury on prompt complaint and the trial court refused. *See* N.T., 6/21/12, at 4. After the trial

Sandusky argues that the instruction was necessary as all but one of the victims waited several years to report the sexual abuse; there were delays of sixteen years, fourteen years, thirteen years, twelve years, ten years, six years, and approximately two years.

In relation to an issue such as this, our scope and standard of review is as follows:

In reviewing a challenge to the trial court's refusal to give a specific jury instruction, it is the function of this Court to determine whether the record supports the trial court's decision. In examining the propriety of the instructions a trial court presents to a jury, our scope of review is to determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. A jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error. Consequently, the trial court has wide discretion in fashioning jury instructions. The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the Appellant was prejudiced by that refusal.

*Commonwealth v. Thomas*, 904 A.2d 964, 970 (Pa.Super.2006) (internal citations, quotation marks, and brackets omitted).

The premise for the prompt complaint instruction is that a victim of a sexual assault would reveal at the first available opportunity that an assault occurred. *See id.* The instruction permits a jury to call into question a complainant's credibility when he or she did not complain at the first available opportunity. *See Commonwealth v. Prince*, 719 A.2d 1086, 1091 (Pa.Super.1998). However, there is no policy in our jurisprudence that the instruction be given in every case.

"The propriety of a prompt complaint instruction is determined on a case-by-case basis pursuant to a subjective standard based upon the age and condition of the victim." *Thomas*, 904 A.2d at 970. For instance, "[w]here an assault is of such a nature that the minor victim may not have appreciated the offensive nature of the conduct, the lack of a prompt complaint would not necessarily justify an inference of fabrication." *Commonwealth v. Jones*, 449 Pa.Super. 58, 672 A.2d 1353, 1357 n. 2 (1996).

At the charging conference the trial court denied the requested instruction, reasoning that in its view "the research is such that in cases involving sexual abuse[,] delayed reporting is not unusual and, therefore, is not an accurate indicia of honesty and may be misleading." N.T., Trial, 6/21/12, at 4. In its opinion addressing Sandusky's post-sentence motions, the

---

court instructed the jury, it asked counsel for "[a]ny additions, corrections, exceptions to the charge as provided *that have not already been placed on the record* before court?" *Id.*, at 33 (emphasis added). Counsel for Sandusky, Karl Rominger, Esquire, specifically asked the trial court if "[e]verything we did in chambers is preserved for the record?" *Id.*, at 34. The trial court responded, "[y]es, all

exceptions previously made are placed on the record." *Id.* Thus, the trial court was well aware of the requested instruction and its decision to not give the instruction to the jury. As per the trial court's explicit instructions to counsel, there was no reason to lodge any further objection. Therefore, this claim is not waived.

trial court explains that its use of the word " 'research' was not accurate." Trial Court Opinion, 1/30/13, at 7 n. 4. The trial court notes that it did not conduct any research on this issue to prepare for the charge conference, but relied on its "experience in handling child sexual abuse cases in a variety of contexts . . . ." *Id.*

The trial court opted to give only the standard credibility charge without the addition of the prompt complaint charge as it reasoned that "the jury would be more appropriately guided" by that charge. *Id.*, at 10. The standard credibility charge, in the trial court's opinion, instructed the jury to consider "the specific credibility issues raised by the defense: memory, self-interest, motive, and bias." *Id.* The trial court concluded its thoughts on the prompt complaint instruction as follows:

> The practical reality is that the standard prompt complaint charge does not take into account the complex and myriad factors that might cause a child victim to delay in reporting an assault, or in comprehending the long-term significance of the assault, or even a child's motivation to protect the person who assaulted them. No one who has had the slightest experience with child sexual abuse or given a whit of thought to the dynamics could conclude that failure to make a prompt complaint, standing alone, is an accurate indicia of fabrication.

*Id.*, at 11.

Although well intentioned, the trial court's analysis of the prompt complaint instruction and its application to cases involving children is not supported in the case law. *See, e.g., Commonwealth v. Lane,* 521 Pa. 390, 398, 555 A.2d 1246, 1251 (1989) ("[I]t is important to note that evidence of a prompt complaint *should also be considered* when the victim is a child.") (emphasis added). As noted, its applica-

tion is not determined by a blanket standard, but rather on a case-by-case basis. *See Thomas, supra.; Commonwealth v. Ables,* 404 Pa.Super. 169, 590 A.2d 334, 340 (1991).

The prompt complaint instruction provides, in pertinent part, that evidence of "delay in making a complaint does not necessarily make [the victim's] testimony unreliable, but may remove from it the assurance of reliability accompanying the prompt complaint or outcry that the victim of a crime such as this would ordinarily be expected to make." Pennsylvania Suggested Standard Criminal Jury Instructions Section 4.13A(2). The instruction further states that the failure to promptly complain and the victim's explanation for the failure "are factors bearing on the believability of [the victim's testimony] and must be considered by you in light of all the evidence in the case." *Id.*, at (3).

■ In this case, the trial court should have evaluated the appropriateness of the instruction with respect to the age and maturity of each victim. There is no question that there was lengthy delay in all but one of the victims' complaints; however, this fact alone does not justify the prompt complaint instruction. Because we can find no discussion by the trial court as to whether the minor victims would have "appreciated the offensive nature" of Sandusky's conduct, we must determine if the trial court's lack of analysis prejudiced Sandusky. *See Commonwealth v. Marshall,* 824 A.2d 323, 328 (Pa.Super.2003) (an error is harmless if the court determines that the error could not have contributed to the verdict). We conclude there was no prejudice.

■ The trial court's credibility instruction largely tracked Section 4.17, Credibility of Witnesses, General, of the Pennsylvania Suggested Standard Crimi-

nal Jury Instructions. The trial court instructed the jury as follows:

Now, as the judges of the facts, you are also the judges of the credibility of the witnesses and of their testimony. This means that you must judge the truthfulness and the accuracy of each witness's testimony and decide whether to believe all of it, part of it, or none of it. So, how you may ask do you go about doing that? Well, there are many factors that you may or should consider when judging credibility and deciding whether or not to believe a witness's testimony.

You might consider, for example, was the witness able to see or hear or know the things about which he or she testified?

How well could the witness remember and describe the things about which he or she testified?

How did the witness look and act and speak while testifying?

Was the witness's testimony uncertain, confused, self-contradictory, argumentative, evasive?

Has the witness ever been convicted of a crime involving dishonesty?

What is the witness's reputation for testifying—or for truthfulness in the community among those who know the witness?

How well does the testimony square with the other evidence in the case, including the testimony of other witnesses? Was it contradicted or supported by the other testimony in evidence which you believe to be true?

*Did the witness have any interest in the outcome of the case, anything to gain or lose by the outcome of the case? Any bias, any prejudice, or any other motive that might affect his or her testimony?*

If you believe that a witness testified falsely about an important issue, then you may keep that in mind in deciding whether to believe the remainder of the witness's testimony.

A person who testifies falsely about one thing may have testified falsely about other things but that is not necessarily so but that's among the factors that you can consider.

And, finally, after thinking about all the testimony and considering some or all of the factors that I had mentioned to you, you draw on your own experience, your own common sense, and you alone, as the sole judges of the facts, should give the testimony of each witness such credibility as you think it deserves.

N.T., Trial, 6/21/12, at 15–17 (emphasis added).

This instruction provided the jury with a sufficient framework to question the victims' credibility. In addition, at trial, Sandusky extensively argued that the victims not only delayed in reporting, but that they did so because the abuse never occurred and that they concocted their stories for financial gain. As stated above, the trial court specifically instructed the jury that they were to consider any possible motives of the victims in coming forward. The vigorous cross-examination of the victims and arguments by defense counsel, when combined with the trial court's instructions on credibility, clearly defined the issues for the jury. Therefore, we find that, under the facts of this case, the absence of the prompt complaint instruction did not prejudice Sandusky.

■ Sandusky next argues that the trial court committed reversible error when it denied his objection that the prosecutor commented adversely on his choice not to testify at trial. During his closing argument, the prosecutor stated:

*The defendant, he had wonderful opportunities to speak out and make his case.* He did it in public. He spoke with Bob Costas. That's the other thing that happened to me for the first time. I had been told I'm almost as good a questioner as Bob Costas, I think, or close.

Well, he had the chance to talk to Bob Costas and make his case. What were his answers? What was his explanation? You would have to ask him? Is that an answer? Why would somebody say that to an interviewer, you would have to ask him? He didn't say he knew why he did it. He just said he saw you do it. Mike McQueary. The janitors. Well, you would have to ask them. That's an answer?

Mr. Amendola did I guess as good a job as possible explaining—he offered that his client has a tendency to repeat questions after they're asked. I would think that the automatic response when someone asks you if you're, you know, a criminal, a pedophile, a child molester, or anything along those lines, your immediate response would be, you're crazy, no. What? Are you nuts?

Instead of, are you sexually attracted to young boys? Let me think about that for a second. Am I sexually attracted to young boys? I would say, no, or whatever it is. But that's Mr. Amendola's explanation that he automatically repeats question [sic]. I wouldn't know. *I only heard him on TV. Only heard*

*him on TV.* So that's his explanation there. He enjoys young children.

N.T., Trial, 6/21/12, at 140–142 (emphasis added).

Pursuant to a court-approved stipulation, counsel reserved their objections until after closing arguments. *See id.,* at 5. After the Commonwealth's closing, Sandusky's counsel, Karl Rominger, Esquire, objected that the prosecutor committed misconduct by stating that Sandusky chose not to testify. The trial court then asked if Sandusky's counsel had "[a]nything further." *Id.,* at 158. Counsel stated, "[n]o, Your Honor." *Id.* The trial court concluded that the prosecutor's statements were "fair rebuttal" and that it had "cautioned the jury again and again the defendant has no obligation to testify or present evidence in his own defense." *Id.* The trial court further stated that it would "caution the jury again...." *Id.* Attorney Rominger then stated, "[t]hank you, Your Honor." *Id.*

 "[E]ven where a defendant objects to specific conduct, the failure to request a remedy such as a mistrial or curative instruction is sufficient to constitute waiver." *Commonwealth v. Manley,* 985 A.2d 256, 267 n. 8 (Pa.Super.2009) (citation omitted). Sandusky did not move for a mistrial or request a curative instruction; he merely lodged an objection. As such, this claim is not preserved for appellate review.[2] *See Commonwealth v. Jones,* 501 Pa. 162, 166, 460 A.2d 739, 741 (1983) (finding prosecutorial misconduct claim waived where defense counsel immediately objected to the prosecutor's conduct but

---

**2.** As noted, the record indicates that Sandusky agreed with the trial court's decision to "caution the jury again" as counsel indicated he had nothing further when asked by the trial court. Sandusky was apparently satisfied with the trial court's resolution of the alleged prosecutorial misconduct as he did not request any further remedy. We note, "the law presumes that the jury will follow

the instructions of the court." *Commonwealth v. Huggins,* 68 A.3d 962, 973 (Pa.Super.2013) (citation omitted).

At oral argument, Sandusky's counsel, Norris E. Gelman, Esquire, who we compliment for his able representation and forthright argument before the panel, admitted that this claim is technically waived.

failed to request mistrial or curative instructions); *cf. Commonwealth v. Rhone*, 422 Pa.Super. 521, 619 A.2d 1080, 1083 (1993) (declining to find waiver for prosecutorial misconduct where counsel failed to request a curative instruction, but lodged an objection, moved to strike the comment, and requested a mistrial).

■ Sandusky next argues that the trial court's refusal to grant a continuance effectively deprived him of his Sixth Amendment right to the effective assistance of trial counsel. This is an error, he argues, that constitutes a structural defect requiring automatic reversal of the judgment of sentence under the United States Constitution. This novel argument fails.

■ Structural defects are a class of constitutional error. *See United States v. Gonzalez–Lopez*, 548 U.S. 140, 148, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006). Structural defects "defy analysis by harmless-error standards because they affect the framework within which the trial proceeds, and are not simply an error in the trial process itself." *Id.* (internal quotation marks, brackets and citation omitted). Few constitutional errors qualify as structural defects. In *Gonzalez–Lopez*, the Supreme Court identified these as the complete "denial of counsel, the denial of the right of self-representation, the denial of the right to public trial, and the denial of the right to trial by jury by the giving of a defective reasonable-doubt instruction." *Id.*, at 149, 126 S.Ct. 2557 (internal citations omitted). The Supreme Court named a new structural defect claim in *Gonzalez–Lopez*: the erroneous disqualifi-

cation of a criminal defendant's choice of retained counsel. *See id.*, at 150, 126 S.Ct. 2557.

None of these claims is at issue in this case. Stripped of the structural defect artifice, Sandusky's claim, at its core, is that the trial court erred in denying his continuance requests and that that decision denied him his Sixth Amendment right to the effective assistance of counsel.

■ The matter of granting or denying a continuance is within the discretion of the trial court. *See Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964). "[A] myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality." *Id.*, at 589, 84 S.Ct. 841. However, "[n]ot every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel." *Morris v. Slappy*, 461 U.S. 1, 11, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983).[3] The Court in *Morris* observed that

> [t]rial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons.

*Id.*

■ Accordingly, a trial court exceeds its constitutional authority only

---

**3.** The Court in *Ungar* applied a due process standard pursuant to the due process clause of the Fifth and Fourteen Amendments, which provide independent protections against arbitrary denials of continuance requests. *See* 376 U.S. at 588–589 and n. 9, 84 S.Ct. 841. "At the point where such a refusal implicates the right to effective assistance of counsel, the guarantees of the [S]ixth and [F]ifth [A]mend-

ments essentially converge, as necessarily do the constitutional inquiries forced by such a request and its denial." *Sampley v. Attorney General of North Carolina*, 786 F.2d 610, 613 (4th Cir.1986) (citing *Morris*, 461 U.S. at 11–12, 103 S.Ct. 1610) (addressing the Sixth Amendment challenge to the refusal to grant a continuance by applying the due process standard in *Ungar* ).

when it exercises its discretion to deny a continuance on the basis of "an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay...." *Id.*, at 11–12, 103 S.Ct. 1610 (internal citation and quotation marks omitted). To determine whether a constitutional violation occurred, we must examine the circumstances present in the case, especially the reasons presented to the trial court for requesting the continuance. *See Ungar*, 376 U.S. at 589, 84 S.Ct. 841.

 Here, from January 28, 2012, until June 15, 2012,[4] Sandusky received voluminous supplemental discovery. From the Commonwealth he received 9,450 pages of documentation, 674 pages of Grand Jury transcripts, and 2,140 pages from subpoenas *duces tecum.* Due to the high volume of discovery received so close to the trial date, counsel maintained they were unprepared for trial and requested continuances on March 22, 2012, May 9, 2012, and May 25, 2012.

In orders entered on February 29, 2012, and April 12, 2012, the trial court summarily denied the continuance requests. In an order entered on May 30, 2012, however, the trial court addressed Sandusky's claim regarding the need to postpone the trial due to the volume of material provided in discovery. The trial court explained its denial as follows:

> The amount of material that I have ordered the Commonwealth to provide in discovery has been significant. No doubt sorting the wheat from the chaff has been time consuming. Again, however, the defense team is assuredly capable, even as the trial is ongoing, of sorting through the material to determine what is useful to the defense and what is not.

> . . .

> While I certainly do not doubt the sincerity of defense counsel in requesting a continuance, the reality of our system of justice is that no date for trial is ever perfect, but some dates are better than others. While June 5th does present its problems, on balance and considering all the interests involved—the defendant's right to a fair trial, the alleged victims' right their day in court [sic], the Commonwealth's obligation to prosecute promptly, and the public's expectation that justice will be timely done—no date will necessarily present a better alternative.

Order, 5/30/12, at 3–4.

The trial court's explanation denotes a careful consideration of the matter. The decision does not reflect a myopic insistence upon expeditiousness in the face of Sandusky's request; it was not an arbitrary denial. Therefore, we can find no constitutional error, nor abuse of discretion, in the denial of the continuance requests.

 Assuming for the sake of argument, however, that the trial court did commit an error in denying the continuance requests, we would find the error harmless. This is a claim that is subject to harmless error analysis. *See Morris*, 461 U.S. at 12, 103 S.Ct. 1610.

Sandusky called his trial counsel, Joseph Amendola, Esquire, to testify at the post-sentence motion hearing. At the hearing, the following exchange occurred on cross-examination regarding the trial court's refusal to grant a continuance:

Q: What item have you discovered since the conclusion of the trial, in your review of these voluminous documents

---

4. Jury selection started on June 5, 2012; the trial started on June 11, 2012.

that you have talked about, that would have altered your conduct at trial?

. . .

Amendola: The answer is none.

Q: None. So there is no item, document, or person that in your review of the documents that you received at any time that would have altered your conduct at trial during the course of the trial; isn't that correct?

Amendola: That's correct.

N.T., Post–Sentence Motion Hearing, 1/10/13, at 39–40. As evidenced by counsel's own testimony, Sandusky suffered no prejudice from the trial court's denial of the continuance requests. Therefore, this claim fails.

██ Lastly, Sandusky argues that the trial court erred in instructing the jury on character evidence. The trial court utilized Section 3.06, Defendant's Character (Reputation), of the Pennsylvania Suggested Standard Criminal Jury Instructions and instructed the jury as follows:

> Now, the defense has offered evidence tending to prove that the defendant is of good character. I'm speaking of the defense witnesses who testified that the defendant has a good reputation in the community for being law abiding, peaceable, nonviolent individual.
>
> The law recognizes that a person of good character is not likely to commit a crime which is contrary to that person's nature. *Evidence of good character may by itself raise a reasonable doubt of guilt and require a verdict of not guilty.*
>
> *So you must weigh and consider the evidence of good character along with the other evidence in this case* and if on the evidence you have a reasonable doubt of the defendant's guilt, you may find him not guilty. . . . But in making that determination, you may consider

evidence of good character which you believe to be true.

N.T., Trial, 6/21/12, at 22 (emphasis added).

Sandusky agrees with the trial court's statement that "[e]vidence of good character may by itself raise a reasonable doubt of guilt and require a verdict of not guilty." Appellant's Brief, at 55. He argues, however, "the [c]ourt immediately thereafter gave a contradictory charge," when it instructed the jury that it had to weigh and consider the evidence of good character with the other evidence in the case. *Id.* He maintains that if the character evidence must be weighed against other evidence "it is not being considered 'in and of itself' as required by [*Commonwealth v.*] *Neely,* [522 Pa. 236, 561 A.2d 1 (1989)]." *Id.,* at 56. This very argument was rejected in *Commonwealth v. Khamphouseane,* 434 Pa.Super. 93, 642 A.2d 490 (1994).

██ It has long been the law in Pennsylvania that "[e]vidence of good character is always admissible for the defendant in a criminal case. *It is to be weighed and considered in connection with all the other evidence in the cause.* It may of itself, in some instances, create the reasonable doubt which would entitle the accused to an acquittal." *Commonwealth v. Cleary,* 135 Pa. 64, 84, 19 A. 1017, 1018 (1890) (emphasis added). *See also Commonwealth v. Padden,* 160 Pa.Super. 269, 50 A.2d 722, (1947) ("To be sure, it [i.e., character evidence] is to be *considered* with all the other evidence in the case.").

In *Neely,* our Supreme Court held that "[a] criminal defendant must receive a jury charge that evidence of good character (reputation) may, in and of itself, (by itself or alone) create a reasonable doubt of guilt and, thus, require a verdict of not guilty." 522 Pa. at 241, 561 A.2d at 3. The appellant in *Khamphouseane* argued *Neely* mandates that character evidence must be

viewed apart from other evidence and may not be weighed by the jury against such evidence. The panel disagreed.

The panel quoted the language from *Cleary* that evidence of character must be "weighed and considered in connection with all the other evidence" in the case and explained that

> nearly a century later, the Supreme Court [in *Neely*] did not undertake to change the substantive law regarding evidence of a defendant's good character. Rather, the Court set out to ensure that the defendant received the benefit of a jury instruction consistent with the law announced in *Cleary*.

642 A.2d at 496.[5] The charge in *Khamphouseane* was "quoted almost verbatim" from the Pennsylvania Suggested Standard Criminal Jury Instructions[6] and, as such, the panel held that "appellant had the benefit of a jury instruction which fully and correctly apprised the jury of the manner in which it could consider appellant's evidence of good character." *Id.*

Here, as mentioned, the trial court quoted near verbatim from Section 3.06 of the Pennsylvania Suggested Standard Criminal Jury Instructions. Thus, pursuant to *Khamphouseane*, the trial court committed no error in charging the jury on the issue of character evidence.

Sandusky further argues that that use of the word "weigh" with the word "must" is erroneous as "it conveyed to the jury that the character evidence had to outweigh other evidence in the case, and if it did it would then 'justify' a verdict of not guilty." Appellant's Brief, at 58. The instruction does no such thing.

As the trial court aptly explains, the charge

> instructs the jury that evidence of good character "may by itself" raise a reasonable doubt and "require" a verdict of not guilty. It then instructs the jury that it must weigh and consider all the other evidence, but it can … "still reach a verdict on character evidence alone."

Trial Court Opinion, 1/30/13, at 12–13. We agree, completely, with the trial court's reasoning. The trial court properly instructed the jury. Accordingly, Sandusky's argument fails.

Judgment of sentence affirmed.

---

**5.** Indeed, the Court in *Neely* "implicitly endorsed" the Pennsylvania Suggested Standard Criminal Jury Instruction on Defendant's Character (Reputation). *Commonwealth v. Sampson*, 900 A.2d 887, 893 (Pa.Super.2006).

**6.** The instruction was, in pertinent part, as follows:

> Evidence of good character may by itself raise a reasonable doubt of guilt and justify a verdict of not guilty.
> You must weigh and consider the evidence of good character along with the other evidence in the case. If on all the evidence, you have a reasonable doubt as to the defendant's guilt, you must find him not guilty.
> 642 A.2d at 495.