J-A16026-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DAVID DWAYNE WALTERS | |
| Appellant | No. 1483 WDA 2013 |

Appeal from the Judgment of Sentence April 11, 2013
In the Court of Common Pleas of Fayette County
Criminal Division at No(s): CP-26-CR-0000735-2009

BEFORE:  DONOHUE, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.:                    **FILED OCTOBER 30, 2014**

David Dwayne Walters appeals from the judgment of sentence imposed April 11, 2013, in the Fayette County Court of Common Pleas. The trial court sentenced him to a term of 16 to 32 months' imprisonment, following Walters' jury conviction of one count of indecent assault of a victim less than 13 years of age.[1]  On appeal, Walters challenges the trial court's evidentiary rulings, failure to grant a mistrial, and jury instructions, as well as the weight and sufficiency of the evidence, and the discretionary aspects of his sentence.  For the reasons set forth below, we affirm.

The facts giving rise to Walters' arrest and conviction are summarized by the trial court as follows:

_____

[1] 18 Pa.C.S. § 3126(a)(7).

[The victim] was born [in June of 1996]. She knew … Walters, having met him when [Walters], the boyfriend of her mother, resided in the home of her mother for about a year.[2] During that time, [the victim] became close to [Walters], and he became a father figure to her. Even after her mother and [Walters] ended their relationship, [the victim] continued to see [Walters].

When she was ten years of age, arrangements were made for her and her sister to spend the weekend with [Walters]. To that end, [Walters] came to their home on a Friday after school and transported the children to a home in Uniontown, Fayette County, Pennsylvania.

In the early morning hours of Saturday, sometime around 3:00 a.m. to 4:00 a.m., [Walters] awakened [the victim]. Laying down beside her, [Walters] put his hand inside her underwear and on her vagina. He then took her hand, placed it on his penis, and started moving her hand up and down.

[At Walters' trial, Trooper David Bell] testified that [Walters] told him his date of birth is [August of 1978]. Further, [Walters] admitted that he did have [the victim] at his home that weekend, a weekend which he said occurred on April 20, 2007.

Trial Court Opinion, 10/25/2013, at 6-7 (record citations omitted).

Walters was subsequently arrested and charged with one count of indecent assault. Twice he entered a plea of *nolo contendre* to the charge, and both times he successfully withdrew the pleas prior to sentencing. Walters' first jury trial ended in a mistrial on December 7, 2012, when the

---

[2] Walters met the victim's mother in December of 2004. N.T., 4/2-4/2013, at 126. He testified that he resided with the victim's family "for approximately two months." *Id.* The victim's mother testified that she dated Walters for about "a year and a half," and that he moved in with her "off and on" during that time. *Id.* at 58. She claimed the the last time he lived with them was in July of 2006. *Id.* at 60.

jury reported that it was deadlocked. His second trial commenced on April 2, 2013. On April 4, 2013, the jury returned a verdict of guilty on the charge of indecent assault. Walters was sentenced, on April 11, 2013, to a term of 16 to 32 months' imprisonment.[3] He filed post-sentence motions, which were denied by the trial court on August 12, 2013. This timely appeal followed.[4]

Although Walters lists 13 issues in the Statement of Questions Involved section of his brief, we have paraphrased and consolidated the issues into the following eight claims:

_____

[3] Following the entry of his first plea of *nolo contendre* in July of 2010, the trial court directed Walters to undergo an assessment by the Sexual Offenders Assessment Board (SOAB) to determine whether he met the classification as sexually violent predator (SVP) under the former Megan's Law, 42 Pa.C.S. § 9791 *et seq*. The SOAB investigator determined that Walters did **not** meet the criteria for classification as an SVP. Effective December 20, 2012, the Sex Offender Registration and Notification Act (SORNA) replaced Megan's Law, and applies to Walters' conviction in this case. **See** 42 Pa.C.S. 9799.13(1) (SORNA applies to "an individual who, on or after the effective date of this section, is convicted of a sexually violent offense[.]"); § 9799.12 (defining "sexually violent offense" as Tier I, II, or III offense listed in § 9799.14); § 9799.14(d)(8) (classifying conviction of 18 Pa.C.S. § 3126(a)(7) as Tier III sexual offense). Neither Walters, nor the Commonwealth, has raised a claim concerning Walters' registration requirements under SORNA.

[4] On August 30, 2013, the trial court ordered Walters to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Walters complied with the trial court's directive and filed a concise statement on September 20, 2013.

1) Whether the trial court erred in denying Walters' request to read into evidence the prior testimony of two unavailable defense witnesses, or to issue a bench warrant for their appearance?

2) Whether the trial court erred in denying Walters' request for a mistrial when, on the second day of trial, Walters was arrested on a bench warrant for another matter outside the courthouse, and in the view of the jury?

3) Whether the trial court erred in precluding Walters from cross-examining the victim's mother regarding the content of letters she sent to him that evidenced her premeditated plan to create false allegations of a sexual assault?

4) Whether the trial court erred in precluding Walters from testifying about another incident that provided a motive for the victim's family to create false allegations of a sexual assault?

5) Whether the trial court erred in failing to instruct the jury that it may draw a negative inference from the victim's failure to make a prompt complaint?

6) Whether the evidence was insufficient to support the verdict?

7) Whether the verdict was against the weight of the evidence?

8) Whether the sentence imposed, outside the standard range of the sentencing guidelines, was significantly higher than his rehabilitative needs?

***See*** Walters' Brief at 4-5.

First, Walters challenges the trial court's refusal to allow him to read into evidence the prior hearing testimony of two unavailable defense witnesses. Specifically, Walters contends he made a good faith effort to locate the missing witnesses, another former girlfriend and her daughter, which included serving them both with a subpoena before trial. Further, he avers that although his attorney declined the trial court's offer to issue a bench warrant for their arrest, "[d]efense counsel reasonably believed that a warrant was unnecessary to produce the witnesses[,]" whom she believed were at a hospital with a relative, because such actions would only antagonize them. Walters' Brief at 13. Lastly, Walters claims the trial court's refusal to admit their prior testimony was not harmless error since their testimony "directly contradicts that of the alleged victim[.]" **Id.** at 14.

We begin with our well-established standard of review:

> The admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion.

**Commonwealth v. Reid**, ____ A.3d ____, 2014 WL 4097637, *15 (Pa. Aug. 20, 2014). "[A]n abuse of discretion is not a mere error in judgment, but, rather, involves bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law." **Commonwealth v. Davis**, 17 A.3d 390, 395 (Pa. Super. 2011) (quotation omitted), *appeal denied*, 29 A.3d 371 (Pa. 2011).

In certain limited circumstances, the prior trial testimony of a witness may be admissible in a subsequent trial for the same crime.

- 5 -

Whenever any person has been examined as a witness, either for the Commonwealth or for the defense, in any criminal proceeding conducted in or before a court of record, and the defendant has been present and has had an opportunity to examine or cross-examine, if such witness afterwards dies, or is out of the jurisdiction so that he cannot be effectively served with a subpoena, **or if he cannot be found**, or if he becomes incompetent to testify for any legally sufficient reason properly proven, notes of his examination shall be competent evidence upon a subsequent trial of the same criminal issue. For the purpose of contradicting a witness the testimony given by him in another or in a former proceeding may be orally proved.

42 Pa.C.S. § 5917 (emphasis supplied). "A witness 'cannot be found,' within the meaning of [Section 5917] only if a good-faith effort to locate the witness and compel his attendance at trial has failed." *Commonwealth v. Blair*, 331 A.2d 213, 214 (Pa. 1975). "It is within the discretion of the trial court to determine what constitutes a good faith effort to locate a missing witness[.]" *Commonwealth v. Lebo*, 795 A.2d 987, 990 (Pa. Super. 2002).

The underlying facts pertaining to this issue were aptly summarized by the trial court as follows:

In the morning of the second day of trial, after the Commonwealth rested, Trial Counsel advised the Court that two witnesses who had been subpoenaed had failed to appear, apparently because of an accident involving the son of one of the witnesses.[5] Trial Counsel then asked for a recess until the next

---

[5] The proposed witnesses were Walters' former girlfriend, Debra Fowler, and her 16-year-old daughter, Mary Jo Hltaky. At Walters' first trial, Fowler and Hltaky testified that they also spent the weekend at the home when the purported abuse took place, and nothing like what the victim described had occurred. *See* N.T. 12/5-7/2012, at 84-93 (testimony of Fowler); 114-117 (testimony by Hltaky). This testimony would have contradicted that of the
*(Footnote Continued Next Page)*

day. The Court advised Trial Counsel that she could ask for bench warrants to be issued to assure the appearance of the witnesses. The Court further advised Trial Counsel that if she did not seek such relief, it would not be granted the following day, to which Trial Counsel replied that she understood. The Court then declared a recess and asked that some verification from the hospital be provided.

When court reconvened at 10:30 A.M., Trial Counsel advised the Court that she was unable to verify, from the hospital, anything confirming the whereabouts of the witness, only text messages from her husband.[6] Trial Counsel was then again advised that a request for a bench warrant would not be granted when trial reconvened the next day, and Trial Counsel answered she understood and that she had discussed the issue with her "client and we believe that based on the circumstances of their unavailability today, we would not like the Court to issue a bench warrant." The trial was then recessed at 10:40 A.M. for the day.

When trial resumed the following day, Trial Counsel advised the Court that the witnesses had again failed to appear, and offered no explanation. Although she offered no explanation, Trial Counsel asked the Court to find that the witnesses were unavailable and to read prior testimony to the jury. The Court then, under the circumstances presented, found

_(Footnote Continued)_ ———————————

victim, who denied Fowler and Hltaky stayed at the house that same weekend. N.T., 4/2-4/2013, at 17, 35.

Defense counsel informed the trial court that she had been notified that Fowler's son (Hltaky's brother) had been in a car accident the night before the first day of trial, and was transferred the previous night to a hospital in Pittsburgh for emergency surgery. _Id._ at 103-104.

[6] Counsel stated that she received text messages from Fowler's husband confirming that Fowler's son underwent surgery at 6:30 that morning, and that Fowler did not have her cell phone with her at the hospital. _Id._ at 106-107. The messages also indicated that her husband "expects her to be home today, and available [to testify] tomorrow." _Id._ at 107. Counsel was unable to provide the trial court with the name of the hospital where Fowler's son was being treated. _Id._ at 108.

that the witnesses were not unavailable[ and denied counsel's request to admit their prior testimony into evidence].

Trial Court Opinion, 10/25/2013, at 9-10 (record citations omitted).

Our review of the record, and in particular the circumstances surrounding the witnesses' failure to appear, reveals no abuse of discretion on the part of the trial court in denying Walters' request to read into the record the witnesses' prior testimony. The trial court provided Walters with ample opportunity to produce the witnesses or deliver some proof of their legitimate unavailability. He failed to do either. Indeed, Walters declined the trial court's offer to issue a bench warrant for the witnesses' arrest the first day they failed to appear, and he neglected to obtain any proof that the witnesses were where they claimed to be, in a hospital caring for their injured son/brother. Therefore, Walters has not demonstrated that, despite his good faith efforts, the witnesses could not be found. *See* 42 Pa.C.S. § 5917; *Blair*, *supra*. *See also Commonwealth v. Connors*, 458 A.2d 190, 195 (Pa. Super. 1981) (subpoenaed witness who refused to testify because she was scared was not "unavailable" for purposes of Section 5917; "counsel delayed too long the 'drastic steps' which would have compelled her attendance" such as issuance of a bench warrant). Finding no abuse of discretion on the part of the trial court, we conclude Walters is entitled to no relief on his first issue.[7]

_____

[7] We agree with Walters' contention that the proposed testimony of Fowler and Hltaky "could have caused jurors to have reasonable doubt as to [his]
*(Footnote Continued Next Page)*

Next, Walters argues the trial court erred in refusing to grant him a mistrial. Specifically, he contends that, as he was exiting the courthouse after the second day of trial, he was arrested by a state constable on a bench warrant for a separate matter, and escorted into a marked vehicle, all in full view of the jury. Walters argues this event, witnessed by the jury, was "inherently prejudicial," and, therefore, the trial court erred when it refused his request for a mistrial. Walters' Brief at 15.

The decision whether to grant a motion for a mistrial is within the trial court's discretion. *Commonwealth v. Tejeda*, 834 A.2d 619 (Pa. Super. 2003).

> "[A] mistrial [upon motion of one of the parties] is required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial." It is within the trial court's discretion to determine whether a defendant was prejudiced by the incident that is the basis of a motion for a mistrial.

*Id.* at 623 (citations and footnote omitted). Accordingly, we review the trial court's ruling for an abuse of discretion. *Id.*

The trial court explained the basis for its ruling as follows:

> The Motion for Mistrial was made by counsel, who contended that she was told by [Walters] that he was approached by a Pennsylvania State Constable just inside the Courthouse door and placed under arrest in the presence of Jurors. It was counsel's position that although she did not know

_(Footnote Continued)_ ———————————

guilt." Walters' Brief at 13. Nevertheless, Walters' remedy, if any, lies in an ineffectiveness of counsel claim in a collateral proceeding.

if anyone saw what happened, there was [a] "reasonable probability that they did […]." Refusing to make assumptions, the Court stated that an inquiry could be made of the Jurors as to whether they observed anything involving [Walters]. After consulting with [Walters], counsel requested that the Court make inquiry of the Jurors. The Court then made inquiry of the Jurors and received a negative response as to all Jurors. Thus, this issue is without merit.

Trial Court Opinion, 10/25/2013, at 11-12 (record citations omitted).

Our review of the record supports the trial court's ruling. When confronted with the potentially prejudicial event, the court polled the jury, asking them: "Did any of you witness anything yesterday as you were leaving the Courthouse regarding the Defendant in this case, David Walters? If so, please raise your hand." N.T., 4/2-4/2013, at 117. After receiving no response, the court denied the motion for a mistrial. Therefore, because Walters was unable to demonstrate that any of the jurors actually witnessed the potentially prejudicial event, we agree with the trial court that a mistrial was unwarranted. *See Commonwealth v. Valerio*, 712 A.2d 301, 302 (Pa. Super. 1998) ("Where a defendant was possibly viewed by the jury panel while handcuffed in the hall outside of the courtroom, but no evidence was presented by the defendant that there was any prejudice or that any juror actually saw him, the trial court properly refused a request for mistrial."), *appeal denied*, 732 A.2d 1210 (Pa. 1998). Accordingly, this issue fails.

In his third claim, Walters contends the trial court erred in precluding his cross-examination of the victim's mother regarding the content of letters

she sent to him, which, he claims are evidence of her premeditated plan to create false allegations of a sexual assault. Specifically, Walters asserts that, in the letters, the victim's mother "threatens [him] that if he does not return her property, she will file reports of sexual assault against him." Walters' Brief at 15. He also claims the letters state that the victim's mother has her children in "'play therapy' preparing them to meet with the District Attorney and testify against [Walters]." **Id.** Walters argues the content of the letters was "highly relevant" and should have been presented to the jury so that they could have drawn their own conclusion as to whether or not the letters demonstrated a "pre-meditated plan on the part of the alleged victim's mother[.]" **Id.** at 16.

As we noted *supra*, "[t]he admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion." **Reid**, **supra**, at *15. Similarly, "[t]he scope of cross-examination is within the trial court's discretion, and this Court cannot disturb the trial court's determinations absent a clear abuse of discretion or an error of law." **Commonwealth v. Ramtahal**, 33 A.3d 602, 609 (Pa. 2011).

In the present case, the trial court excluded the letters because it determined they were not relevant. Trial Court Opinion, 10/25/2013, at 14. The Pennsylvania Rules of Evidence define evidence as relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the

action." Pa.R.E. 401. Generally, all relevant evidence is admissible at trial. Pa.R.E. 402.

Here, Walters sought to question the victim's mother about two letters she purportedly wrote to Walters in the summer of 2006, almost a year **before** the incident in question. The trial court described the first letter as follows:

> I was handed an envelope which indicates a postage date of 18 July 2006. And it says I talked to the DA on Monday the 17th. She has to talk to [the victim and her two sisters]. She also has to talk with [the victim's nephew].

N.T., 4/2-4/2013, at 76.[8] The second letter, dated August 28, 2006, and addressed to a "Mr. Hawkins," contained the following statements:

> [A]sk Dave why I went to the DA. He knows. He is also in a lot of trouble. My kids are in play therapy so they can testify. Dave's f-u-c-k-e-d. Hope he likes his little cell.

*Id.* at 78-79. "Dave" is apparently a reference to the defendant, David Walters.

After considering the letters and offers of proof, the trial court determined that neither letter was relevant to the issues at trial. With regard to the first letter, the court found that it was not relevant because it

---

[8] The victim's oldest sister, who was 23 years old at the time of trial, had a son in 2006. *See* N.T., 4/2-4/2013, at 60. Both she and her son lived with the victim, her mother, and their other sister at the time of the sexual assault.

referred to all of the children in the victim's home. However, only the victim and one sister were involved in the incident at issue. *See id.* at 78. Further, with regard to the second letter, the trial court did not believe it supported Walters' theory that "there was a **premeditated plan** by the victim's mother to bring criminal charges." Trial Court Opinion, 10/25/2013, at 14 (emphasis supplied).

We detect no abuse of discretion on the part of the trial court in precluding Walters from cross-examining the victim's mother regarding the content of the two letters at issue. Neither letter tends to make it "more or less probable" that the victim's mother **fabricated** allegations of abuse in the present case. Pa.R.E. 401. Therefore, we agree with the determination of the trial court that the evidence was not relevant, and Walters' third claim fails.

Walters next argues the trial court erred in precluding his testimony regarding an incident with the victim's grandmother that provided a motive for creating false allegations against him. Specifically, he contends the trial court erred when it refused to allow him to testify that he wrongfully withdrew funds from the victim's grandmother's bank account, using the grandmother's ATM card that she provided to him for another purpose. In his brief, Walters summarizes the facts as follows:

> [Walters] had been commissioned by the alleged victim's grandmother to remodel her bathroom in her home, shortly after [the] weekend visit with the alleged victim. The grandmother gave [Walters] her ATM card, with the understanding that [he] was going to use it [to] purchase materials for the remodeling

- 13 -

job. Instead, [Walters] withdrew cash and kept the same. [Walters] was subsequently charged with theft, he pled guilty to the charges, and admitted to taking the money. As soon as he made these withdraw[als] from the grandmother's bank account, the alleged victim 'suddenly' after weeks had passed, reported the incident of 'alleged indecent assault'.

Walters' Brief at 17. He asserts that this testimony was admissible "in order to establish a motive by the alleged victim, specifically, revenge, for [Walters] taking this money." *Id.*

Our review of the record reveals that Walters did, indeed, testify at trial regarding the incident with the victim's grandmother, the resultant criminal charges, and the proximity of that event to the report of abuse. *See* N.T., 4/2-4/2013, at 136-140. Accordingly, no relief is warranted on this claim.

Next, Walters challenges the trial court's refusal to provide the jury with a "prompt complaint" instruction, that is, an instruction that the jury may draw a negative inference from the fact that the victim failed to make a prompt complaint of the alleged sexual abuse. He argues that, in refusing the instruction, the trial court ignored certain facts that weighed in favor of providing a "prompt complaint" instruction.

Our review of this issue is guided by the following principles:

> In reviewing a challenge to the trial court's refusal to give a specific jury instruction, it is the function of this Court to determine whether the record supports the trial court's decision. In examining the propriety of the instructions a trial court presents to a jury, our scope of review is to determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. A jury charge will be deemed

erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error. Consequently, the trial court has wide discretion in fashioning jury instructions. The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the Appellant was prejudiced by that refusal.

**Commonwealth v. Sandusky**, 77 A.3d 663, 667 (Pa. Super. 2013) (quotation omitted).

The foundation for a prompt complaint instruction is codified at 18 Pa.C.S. § 3105, which provides, that while the "[p]rompt reporting" of a sexual assault is not required, a defendant may "introduc[e] evidence of the complainant's failure to promptly report the crime if such evidence would be admissible pursuant to the rules of evidence." Indeed,

[t]he premise for the prompt complaint instruction is that a victim of a sexual assault would reveal at the first available opportunity that an assault occurred. **See id.** The instruction permits a jury to call into question a complainant's credibility when he or she did not complain at the first available opportunity. **See Commonwealth v. Prince**, 719 A.2d 1086, 1091 (Pa.Super.1998). However, there is no policy in our jurisprudence that the instruction be given in every case.

"The propriety of a prompt complaint instruction is determined on a case-by-case basis pursuant to a subjective standard based upon the age and condition of the victim." **Thomas**, 904 A.2d at 970. For instance, "[w]here an assault is of such a nature that the minor victim may not have appreciated the offensive nature of the conduct, the lack of a prompt complaint would not necessarily justify an inference of fabrication." **Commonwealth v. Jones**, 449 Pa.Super. 58, 672 A.2d 1353, 1357 n. 2 (1996).

***Sandusky***, ***supra***, 77 A.3d at 667.

Walters argues the trial court ignored certain facts when it determined that a prompt complaint instruction was not warranted in the present case. Specifically, he contends the trial court disregarded the fact that (1) the victim had access to a telephone while she was staying at Walters' home and actually spoke to her mother that weekend but did not tell her mother about the assault; (2) there were other adults staying at the home that weekend, but the victim failed to report the assault to them; (3) the victim did not report the assault to her grandmother when Walters returned her to the grandmother's house at the end of the weekend; and (4) the allegations did not come to light until after Walters unlawfully withdrew funds from the grandmother's bank account. Walters' Brief at 19. Walters concludes "[a]ll of these factors, ignored by the Trial Court … have created reversible error." ***Id.*** at 19-20.

The trial court opined, however, that its review of the relevant facts concerning the proposed "prompt complaint" charge led to its conclusion that the charge was not warranted. The court explained:

> In making this ruling, we looked to the age of the victim, which at the time of the crime, was ten; that the victim told the daughter of [Walters'] girlfriend later that same day; that the victim told her mother two weeks later; that before telling her mother, the victim told her sister; that the victim did not tell her mother right away because she was scared; and that [Walters] who had custodial control over the victim, and was a father figure to her, asked her "not to tell anybody and [she] told him [she] wouldn't."

Trial Court Opinion, 10/25/2013, at 17-18.

- 16 -

We detect no abuse of discretion on the part of the trial court. As stated above, when determining the propriety of a prompt complaint charge, the trial court must consider "the age and condition of the victim[.]" ***Sandusky***, ***supra***, 77 A.3d at 667 (citation omitted). Here, the trial court considered the fact that the ten year old victim looked to her assailant as a father figure and was staying at his house for the weekend when the abuse occurred. While she did not tell an adult about the assault until two weeks later, she did tell a friend the day after it occurred, and one of her sisters sometime later. Therefore, no relief is warranted on this claim.

In his sixth issue, Walters challenges the sufficiency of the evidence supporting his conviction. Specifically, he contends "[t]here is no direct evidence, or even circumstantial evidence, that these allegations occurred." Walters' Brief at 21. In support of his argument, he emphasizes the following:

> [T]here was no report made of the incident for two weeks after the alleged incident. There was no physical evidence that the incident occurred. None of the Commonwealth's witnesses could give first hand testimony as to a date or location of the incident.

***Id.***

Our review of a challenge to the sufficiency of the evidence is well-settled:

> We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every

element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.

The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and "any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances."

**Commonwealth v. Mollett**, 5 A.3d 291, 313 (Pa. Super. 2010) (internal citations omitted), *appeal denied*, 14 A.3d 826 (Pa. 2011).

When, as here, the defendant is charged with indecent assault of a victim less than 13 years of age, the Commonwealth must prove the following:

A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and …

(7) the complainant is less than 13 years of age[.]

18 Pa.C.S. § 3126(a)(7). "Indecent contact" is defined in the Crimes Code as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa.C.S. § 3101.

Our review of the record reveals the victim testified that sometime during the springtime when she was in fifth grade, Walters arranged for her and her sister to spend the weekend with him at a home in Uniontown,

Fayette County. N.T., 4/2-4/2013, at 14, 16, 34. This was the only time the victim visited Walters for the weekend. *Id.* at 31. She testified that in the middle of the night, Walters woke her and put his hand inside her underwear on her vagina. *Id.* at 18, 21. He then took her hand, put it on his penis, and moved it up and down. *Id.* at 21. This testimony, if deemed credible by the jury, was sufficient to support a charge of indecent assault. Indeed, it is well-established that "[t]he uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant." *Commonwealth v. McDonough*, 96 A.3d 1067, 1069 (Pa. Super. 2014) (citation omitted).

Furthermore, while the victim could not recall the specific date or location of the weekend visit, Walters acknowledged that he arranged for the victim and her sister to stay at his house the weekend of April 20-22, 2007. N.T., 4/2-4/2013, at 127-128. Moreover, he testified that that was the only time the victim stayed with him. *Id.* at 127. Therefore, Walters' challenge to the sufficiency of the evidence fails.

Walters' penultimate claim asserts that the verdict is against the weight of the evidence. Appellate review of a weight of the evidence claim is also well-established:

> A weight of the evidence claim concedes that the evidence is sufficient to sustain the verdict, but seeks a new trial on the ground that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice. *Commonwealth v. Widmer*, 560 Pa. 308, 318–20, 744 A.2d 745, 751–52 (2000); *Commonwealth v. Champney*, 574 Pa. 435, 443–44, 832 A.2d 403, 408–09 (2003). On review, an

- 19 -

appellate court does not substitute its judgment for the finder of fact and consider the underlying question of whether the verdict is against the weight of the evidence, but, rather, determines only whether the trial court abused its discretion in making its determination. **Widmer**, 560 Pa. at 321–22, 744 A.2d at 753; **Champney**, 574 Pa. at 444, 832 A.2d at 408.

**Commonwealth v. Lyons**, 79 A.3d 1053, 1067 (Pa. 2013), *cert. denied*, 134 S.Ct. 1792 (2014).

Walters' argument that the verdict is against the weight of the evidence is primarily a restatement of his prior claims. **See** Walters' Brief at 24-27 (contending that (1) "he is entitled to a new trial because he was not given the opportunity to have the testimony of … two of his key, eyewitnesses, presented to the jury[;]" (2) he was prejudiced when he was arrested, on an unrelated matter, in the view of the jury; and (3) he was not permitted to enter into evidence letters written by the victim's mother which supported his defense of fabrication). The only "new" claim is his assertion that the jury could not determine whether the victim was less than 13 years of age at the time of the sexual assault because the victim "could not remember when these allegations took place[,]". Walters' Brief at 23. However, as noted *supra*, Walters acknowledged that the victim and her sister spent the weekend with him only one time, from April 20-22, 2007, when the victim would have been ten years' old. **See** N.T., 4/2-4/2013, at 10 (testimony regarding victim's date of birth).

The trial court disposed of this claim as follows:

We have set forth the testimony offered at trial, *supra*, and will not re-state it here. The only conflict in the testimony is the denial of [Walters] that he committed the acts testified to by the

- 20 -

victim. While it is correct that the victim, who was ten years of age when the offense was committed, could not remember the exact date, she did testify that it was during the spring, and [Walters] told Trooper Bell that he had custody of the child during the weekend of April 20, 2007. If children are to be protected by the Criminal Justice System, a certain degree of imprecision concerning times and dates must be tolerated. *Commonwealth v. Groff*, 584 A.2d 1237, 1242 (Pa. Super. 1988). The verdict rendered by the jury was not contrary to the evidence it received, and does not shock one's sense of justice. Hence, this issue is without merit.

Trial Court Opinion, 10/25/2013, at 23. We find no abuse of discretion. Accordingly, Walters is entitled to no relief.

Lastly, Walters challenges his sentence, arguing there was "no justification" for sentencing him outside the standard range of the sentencing guidelines. Walters' Brief at 28. Further, he asserts "[t]he amount of time that this offense has been pending against [him] has been grueling and punishing[,]" and the sentence imposed was "significantly higher than [his] rehabilitative needs." *Id.* at 28-29.

Preliminarily, we note that, contrary to Walters' claim, the sentence imposed by the trial court was within the standard range of the sentencing guidelines. The indecent assault conviction carried an offense gravity score of five, and Walters had a prior record score of four. *See* 204 Pa.Code 303.15; Guideline Sentence Form, 4/11/2013. Accordingly, the Sentencing Guidelines called for a minimum standard range sentence of nine to 16 months' imprisonment. *See* 204 Pa.Code § 303.16(a); Guideline Sentence Form, 4/11/2013. Therefore, Walters' sentence of 16 to 32 months' imprisonment was within the standard range of the guidelines.

"Sentencing is a matter vested in the sound discretion of the judge, and will not be disturbed on appeal absent a manifest abuse of discretion." **Commonwealth v. Sheller**, 961 A.2d 187, 190 (Pa. Super. 2008) (citation omitted), *appeal denied*, 980 A.2d 607 (Pa. 2009). Where, as here, a defendant seeks to challenge the discretionary aspects of his sentence, he must set forth a substantial question "that the sentence imposed is either inconsistent with a specific provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing process."[9] **Commonwealth v. Ventura**, 975 A.2d 1128, 1133 (Pa. Super. 2009), *appeal denied*, 987 A.2d 161 (Pa. 2009) (citation omitted). This Court will not accept "bald assertions of sentencing errors[,]" but rather the defendant "must articulate reasons the sentencing court's actions violated the sentencing code." **Commonwealth v. Moury**, 992 A.2d 162, 170 (Pa. Super. 2010). Moreover,

> [w]here the sentencing court had the benefit of a presentence investigation report ("PSI"), we can assume the sentencing court

---

[9] We note that Walters has complied with the procedural requirements for appeal by filing a timely notice of appeal, and challenging his sentence in a post-sentence motion before the trial court. **Commonwealth v. Dunphy**, 20 A.3d 1215, 1220 (Pa. Super. 2011). Although he neglected to include in his appellate brief the requisite statement pursuant to Pa.R.A.P. 2119(f), setting forth the reasons relied upon for allowance of appeal, the Commonwealth did not object to this omission. Therefore, we may overlook the defect. **Commonwealth v. Titus**, 816 A.2d 251, 255 (Pa. Super. 2003).

> "was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." Further, where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code.

*Id.* at 171 (citations omitted).

Here, the trial court had the benefit of a PSI, which it specifically acknowledged it had reviewed prior to the sentencing hearing. N.T., 4/11/2013, at 5. The court also stated that it had considered the gravity of the offense, as well as Walters' rehabilitative needs. *Id.* at 4-5. However, the court ultimately concluded that "a lesser sentence would depreciate the seriousness of this crime." N.T., 4/11/2013, at 5. Walters has provided only a "bald assertion" that the trial court's standard range sentence was unreasonable. *Moury*, *supra*. Upon our review, we detect no abuse of discretion on the part of the trial court, and Walters is, accordingly, entitled to no relief on this claim.

Having found none Walters' claims raised on appeal entitle him to relief, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/30/2014