J-S23013-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| IN RE: S.D., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.D., A MINOR | : | No. 936 EDA 2014 |

Appeal from the Dispositional Order March 21, 2014,
Court of Common Pleas, Philadelphia County,
Juvenile Division at No. CP-51-JV-0000345-2014

BEFORE:  DONOHUE, SHOGAN and STRASSBURGER*, JJ.

MEMORANDUM BY DONOHUE, J.:                    **FILED MAY 14, 2015**

S.D. appeals from the March 21, 2014 dispositional order of the Philadelphia County Court of Common Pleas following her adjudication of delinquency for simple assault.[1]  On appeal, S.D. challenges the juvenile court's denial of her request for a continuance, made on the day of trial, for her counsel to investigate three alleged eyewitnesses who could potentially testify in support of her defense.  S.D. also contests the basis for the juvenile court's finding that she committed simple assault, asserting that the juvenile court "improperly shift[ed] the burden of proof" to the defense to disprove that she committed the delinquent act.  Upon review, we vacate and remand for a new adjudicatory hearing.

On February 5, 2014, police arrested S.D. and charged her with simple assault, recklessly endangering another person and conspiracy.  On February 18, 2014, the juvenile court held a pretrial conference attended by S.D., her

---

[1]  18 Pa.C.S.A. § 2701(a)(1).

*Retired Senior Judge assigned to the Superior Court.

mother, Attorney Emily Murbarger from the Office of the Public Defender, and an assistant district attorney. The record reflects that at that proceeding, S.D. rejected an offer made to her by the Commonwealth and that the discovery process was complete. The juvenile court set March 21, 2014 for the adjudicatory hearing.

At the March 21, 2014 proceeding, Attorney Stacey Greenspan from the Office of the Public Defender ("Attorney Greenspan") was representing S.D. Prior to the commencement of the hearing, off the record, Attorney Greenspan apparently requested a continuance on her client's behalf. Once on the record, the juvenile court queried why Attorney Greenspan was not prepared to proceed. Thereafter, the following exchange took place between Attorney Greenspan and the juvenile court:

> MS. GREENSPAN: Your Honor, we found out about the three witnesses yesterday.
>
> THE COURT: There's no we, counsel. I'm asking you why you're not ready for trial.
>
> MS. GREENSPAN: I am not ready for trial[] because I received this file yesterday.
>
> THE COURT: You received it yesterday from who[m]?
>
> MS. GREENSPAN: I guess from the attorney who handled it from pretrial in A Court and when I --
>
> THE COURT: You guess from the attorney who handled it. … Something is missing here. I have been given a good one. Standing right there, there's

never any guesses. You were assigned by somebody or not?

MS. GREENSPAN: Yes, Your Honor.

THE COURT: To represent this child?

MS. GREENSPAN: Yes.

THE COURT: Okay. I'm asking you why you're not ready because we're going to trial now, and I'm just asking you why you're not ready?

MS. GREENSPAN: And my answer is that there has not been contact with my client. When I spoke with my --

THE COURT: You mean your client hadn't been in contact with you?

MS. GREENSPAN: That's correct. And when I reached out --

THE COURT: Why is that?

MS. GREENSPAN: I can't say. I don't know.

THE COURT: But she got a form when she was arrested saying that she had to get in touch with you, your office to prepare a defense in her case. She did get that, didn't she?

MS. GREENSPAN: Yes, Your Honor.

THE COURT: And did she get in touch with you to prepare for your case?

MS. GREENSPAN: Not me personally, no, Your Honor.

THE COURT: Did she get in touch with anyone from your office to prepare for this case?

MS. GREENSPAN: I don't believe so, Your Honor.

THE COURT: Well, you're going to have to do the best you can.

MS. GREENSPAN: Would Your Honor bifurcate for the defense witnesses?

THE COURT: Why should I do that?

MS. GREENSPAN: Because there are three witnesses, three eyewitnesses.

THE COURT: That may be so. When did you learn about the witnesses?

MS. GREENSPAN: Yesterday.

THE COURT: From who?

MS. GREENSPAN: From my client.

THE COURT: Your client had an obligation to tell you about her witnesses and preparing her for trial some time ago. And [the prosecutor] is going to put on his case, and then you're going to have to put on yours. If she was not willing to follow the directions of the [c]ourt, she gets what she gets but all we can do is our best.

N.T., 3/21/14, at 4-6.

The Commonwealth then called its first and only witness, the alleged victim in the case, D.C. She testified that she was walking home from school when friends of S.D. came up to her and asked if she was the person S.D. wanted to fight. D.C. then approached S.D., who was also walking home from school, and asked if S.D. wanted to fight her, to which S.D. replied that she did not.

- 4 -

D.C. then walked to the corner of 54th and Delancey Streets and waited for a friend, not knowing that S.D. resided there. D.C. stated that S.D.'s mother came outside, asked, "is this the girl?" to which S.D. replied "yeah." *Id.* at 11. According to D.C., S.D.'s mother proceeded to strike D.C., and S.D. "charged in." *Id.* D.C. testified that S.D. and her mother pulled D.C.'s hair, resulting in D.C. having a bald spot on her head. S.D. also reportedly kicked D.C., splitting D.C.'s lip. D.C. testified that she believed several of S.D.'s friends witnessed the fight.

Following D.C.'s testimony, the Commonwealth rested. Attorney Greenspan began the presentation of S.D.'s case by stating a stipulation on the record that if called to testify, S.D.'s uncle would testify that S.D. has a reputation in the community as "being a peaceful and law-abiding citizen." *Id.* at 22. S.D. then testified on her own behalf, and agreed with D.C. that D.C. asked if S.D. had said she wanted to fight her, but stated that upon telling D.C. "no," D.C. told S.D. that she wanted to fight S.D. S.D. stated that it went so far as to require the mother of a friend of S.D. to step in and ensure that S.D. received a ride home to protect S.D. from D.C.

Upon arriving home, S.D. testified that she told her mother what happened. Her mother went outside, saw D.C., asked, "is this her?" and upon receiving confirmation from S.D., verbally confronted D.C. According to S.D., D.C. struck S.D.'s mother, following which S.D. admitted that she hit D.C. in retaliation.

At the conclusion of the hearing, the juvenile court stated the following:

> The reason I'm finding you guilty of simple assault is because you were involved in activity that is illegal.
>
> You were given an attorney to prepare your defense and to assure that everything in this incident was exposed to light, and you took no action to prepare. You did nothing.
>
> I find simple assault. This is an adjudication of delinquency. I'm putting her on probation.

*Id.* at 27. Attorney Greenspan requested that the juvenile court state on record the reasons for the adjudication, and the juvenile court responded: "She has a disrespect for the process of law. She was prepared to fight in the street, and I believe that she lied under oath." *Id.* at 28.

S.D. filed a timely notice of appeal, followed by a court-ordered concise statement of errors complained of on appeal. On October 9, 2014, the juvenile court issued a responsive opinion pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure.

S.D. raises the following issues for our review:

> 1. Did not the juvenile court err when it denied [S.D.] her constitutional right to present a defense, when, at the first trial listing in juvenile court, it denied a continuance request by the defense to further investigate and secure attendance of essential witnesses?
>
> 2. Did not the juvenile court err by improperly shifting the burden of proof to [S.D.] and by drawing improper adverse inferences from [S.D.]'s failure to

present evidence, blaming her for not sufficiently preparing her defense, thereby violating [S.D.]'s rights to the presumption of innocence, due process and fundamental fairness?

S.D.'s Brief at 3.

In support of her first issue raised on appeal, S.D. asserts that by denying her request for a continuance, the juvenile court precluded her from presenting witnesses in her favor, thus violating her right to due process guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. *Id.* at 11-14. The juvenile court denies this claim. It states that its reason for denying the request for a continuance was based upon its desire to avoid the problems that arise from the grant of continuances. Juvenile Court Opinion, 10/6/14, at 2-3. According to the juvenile court, there was a historical backlog of cases in the Philadelphia County Juvenile Court, which led to some cases never being tried for various reasons. *Id.* at 2. The juvenile court points to the fact that S.D. had forty-four days between the appointment of counsel until the date of trial to prepare her case, and states that her failure to take advantage of that time "does not equate to an abuse of discretion" by the juvenile court in denying her request for a continuance. Juvenile Court Opinion, 10/6/14, at 3-4.

We review a denial of a motion for continuance for an abuse of discretion. *Commonwealth v. Ross*, 57 A.3d 85, 91 (2012) (en banc). "An abuse of discretion is not merely an error of judgment; rather, discretion

is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record." *Id.* (citations and quotations marks omitted).

> A bald allegation of an insufficient amount of time to prepare will not provide a basis for reversal of the denial of a continuance motion. Instead, [a]n appellant must be able to show specifically in what manner he was unable to prepare his defense or how he would have prepared differently had he been given more time. We will not reverse a denial of a motion for continuance in the absence of prejudice.

*Id.* (internal citations omitted).

"[A] myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality." *Commonwealth v. Sandusky*, 77 A.3d 663, 671 (Pa. Super. 2013) (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)). Therefore, "[i]n reviewing the denial of a continuance, we have regard for the orderly administration of justice as well as the right of a criminal defendant to have adequate time to prepare his defense." *Commonwealth v. Small*, 741 A.2d 666, 682-83 (Pa. 1999) (citation omitted). "To determine whether a constitutional violation occurred, we must examine the circumstances present in the case, especially the reasons presented to the trial court for requesting the continuance." *Sandusky*, 77 A.3d at 672.

When reviewing a lower court's denial of a request for a continuance to secure the attendance of a defense witness we must consider the following:

> (1)    the necessity of the witness to strengthen the defendant's case;
>
> (2)    the essentiality of the witness to the defendant's defense;
>
> (3)    the diligence exercised to procure his or her presence at trial;
>
> (4)    the facts to which he or she could testify; and
>
> (5)    the likelihood that he or she could be produced at court if a continuance were granted.

**Small**, 741 A.2d at 683 (citation omitted).

We have carefully reviewed the record in this case and can find no abuse in the juvenile court's discretion, as counsel for S.D. failed to create a record in support of her continuance request. Counsel did not file a written motion detailing the reasons for the requested continuance. At the adjudicatory hearing, she presented no information as to the identity of the potential witnesses, what she believed their testimony would be, or how, if at all, the testimony would aid in S.D.'s defense. Nor did she indicate the efforts, if any, made by herself, other members of the Public Defender's Office, or S.D. to speak to the potential witnesses in advance of the adjudicatory hearing. Although Attorney Greenspan stated that she did not receive S.D.'s file until the day before the hearing, the record reflects that the Office of the Public Defender had been representing S.D. since at least

February 18, 2014.[2]  Counsel also did not request to put S.D.'s testimony on the record so that S.D. could identify when she became aware of the identity of the alleged witnesses and what she believed their testimony would be.

We agree with counsel for S.D. that "the existence of discretion in the [juvenile] court is not a license to trample underfoot the right of a person on trial for a crime to call witnesses necessary to defend against that charge." S.D.'s Brief at 17.  The defendant, however, has an obligation to present a sufficient basis before the lower court for this Court to conclude that the lower court abused its discretion by denying a continuance request.  **See Small**, 741 A.2d at 683; **Ross**, 57 A.3d at 91; **Sandusky**, 77 A.3d at 671-72.  As counsel for S.D. failed to do so in this case, we are unable to find that the juvenile court abused its discretion by denying her request for a continuance of the adjudicatory hearing.

Next, S.D. asserts that the juvenile court "deprive[d] [her] of her constitutional right to the presumption of innocence, and by extension, to due process and fundamental fairness," by basing its finding of guilt upon her failure to adequately prepare for the adjudication hearing.  S.D.'s Brief at 21-24.  According to S.D., in doing so, the juvenile court shifted the burden of proof to her, requiring her to disprove her guilt, rather than

---

[2]  The certified record on appeal does not contain a written entry of appearance in this case.  There is no indication when the Office of the Public Defender began representing S.D. other than an attorney from that office representing S.D. at the February 18, 2014 pretrial hearing.  **See** Juvenile Order, 2/18/14.

forcing the Commonwealth to prove beyond a reasonable doubt her responsibility for the crimes charged. *Id.* at 21-23. The juvenile court disagreed, stating:

> While it is true that this [c]ourt found that [S.D.] had demonstrated disrespect for the process of law, this [c]ourt's adjudication of the [sic] delinquency was based upon the determination that [S.D.] was in need of treatment, rehabilitation and supervision. This [c]ourt found that [S.D.] was engaged in a fight on the street during which she and her mother struck and kicked the [c]omplainant[,] causing her bodily injury. This [c]ourt also took into account its determination that [S.D.] lied under oath at her adjudicatory hearing. While this [c]ourt noted that [S.D.] did not take steps afforded to her to prepare for [c]ourt, this was not the basis of the adjudication of delinquency.

Juvenile Court Opinion, 10/6/14, at 4-5.

Had the juvenile court based its decision to adjudicate S.D. delinquent solely based upon its findings that she engaged in illegal activity and provided testimony that was not credible, S.D. would not be entitled to relief for the argument raised on appeal.[3] Despite the juvenile court's protestations to the contrary, however, the record reveals that in adjudicating S.D. delinquent, it relied, in part, upon S.D.'s failure to prepare for court and present a defense. When announcing its decision to adjudicate

---

[3] As we explain infra, an adjudication of delinquency requires a finding that a juvenile committed a delinquent act and is in need of rehabilitation, supervision or treatment. 42 Pa.C.S.A. § 6302. S.D. does not challenge, and we therefore do not decide, whether the evidence presented supported a finding that she was in need of rehabilitation, supervision or treatment.

S.D. delinquent, the juvenile court stated it was doing so because in addition to finding that she was involved in illegal activity, she "took no action to prepare" her defense "and to assure that everything in this incident was exposed to light[.]" N.T., 3/21/14, at 27. When asked by Attorney Greenspan for clarification as to the basis for its decision to adjudicate S.D. delinquent, the juvenile court responded: "She has a disrespect for the process of law. She was prepared to fight in the street, and I believe she lied under oath." N.T., 3/21/14 at 28.

The Juvenile Act defines a "delinquent child" as "[a] child ten years of age or older whom the court has found to have committed a delinquent act and is in need of treatment, supervision or rehabilitation." 42 Pa.C.S.A. § 6302. A "delinquent act" is, in relevant part, "an act designated a crime under the law of this Commonwealth[.]" *Id.* S.D.'s "disrespect for the process of law" has nothing to do with whether she is a delinquent child. Rather, as the juvenile court's opinion makes clear, this is solely a consideration of the adequacy of S.D.'s preparation for the hearing and the presentation of her case.

It is well-settled law that a criminal defendant has no duty to present any evidence or witnesses on his or her behalf, "but may stand mute protected by the presumption of innocence and demand that the Commonwealth sustain its burden of proving his guilt beyond a reasonable doubt." *Commonwealth v. Miller*, 208 A.2d 867, 870 (Pa. Super. 1965)

(en banc). Of relevance to this appeal, in **Miller**, the prosecutor in his closing argument commented on the fact that the defendant did not testify and called only one witness in his defense. **Id.** at 869. The en banc panel found that this statement, standing alone, may not have required reversal:

> If the remark is of such a character as to violate the accused's constitutional rights, such as a reference to his failure to take the witness stand, it cannot be cured by the trial judge and a new trial must be ordered; * * *'. However[,] it has been held permissible in criminal cases for the trial judge and the district attorney to comment to the jury on the defendant's failure to testify provided it is done fairly and does not attempt to raise any adverse inference in the mind of the jury. The statute prohibits adverse comment; not comment generally.

**Id.** (quoting **Commonwealth v. Wilcox**, 173 A. 653 (Pa. 1934)).

During jury deliberations, however, the jury submitted a question, asking, "Does a juror have the right to take into consideration the fact that the defense made no attempt to defend the accused by witnesses?" **Id.** The trial court responded by stating:

> Yes, a juror does have a right to take into consideration the fact that the defense made no attempt to defend the accused by witnesses', if that is what you found he did, if he made no attempt, but, as I say, he called one witness on his behalf. So obviously you can take that into account but you can't draw anything adverse to the defendant by the fact that he, the defendant, did not take the stand.

**Id.** at 870. This Court found that this was "fundamental error":

> This answer was a clear affirmation not only that the jury could take into consideration the failure of

the defendant to attempt to get witnesses and that witnesses were not called by the defendant but because of the emphasis placed on the fact that they could not make an adverse inference in the case of the defendant's election that they could make such an adverse inference because he failed to better defend himself.

… With this charge the jury may draw an adverse inference from the defendant's failure to produce evidence and, in effect, treat it as circumstantial evidence of guilt which, together with the Commonwealth's evidence could convince the jury beyond a reasonable doubt.

The trial judge's answer in effect nullified the presumption of innocence, abrogated the right to remain silent and instructed the jury to make adverse inferences. … From the charge of the court in answer to the jury's question a reasonable inference can be made by the jury that the defendant would have called witnesses if he were not guilty.

*Id.* On that basis, we remanded the case for a new trial. *Id.* at 871.

The case at bar was a bench trial, and thus, the lower court, not a jury, served as the finder of fact, and we therefore presume that the juvenile court knew the law and applied the correct burden of proof. **Commonwealth v. Smith**, 97 A.3d 782, 789 (Pa. Super. 2014). This presumption may be rebutted if there is evidence of record to support a contrary conclusion. **See Commonwealth v. Salter**, 858 A.2d 610, 615-16 (Pa. Super. 2004).

As stated in **Miller**, it is error for the factfinder to draw an adverse inference from the defendant's failure to present evidence in support of her

defense. *Miller*, 208 A.2d at 870. Here, the juvenile court expressly stated that when adjudicating her delinquent, it relied, in part, upon S.D.'s failure to present evidence in her defense. This is a clear indication by the juvenile court that it did not apply the proper burden of proof, effectively rebutting the presumption that the lower court, sitting as finder of fact, applies the correct law and burden of proof. The juvenile court's reliance upon her failure to attempt to secure witnesses in advance of the hearing or to call witnesses in support of her defense was improper. *See id.*

We are therefore compelled to vacate S.D.'s disposition and remand the case for a new adjudicatory hearing at which the proper burden of proof is applied.

Disposition vacated. Case remanded for a new adjudicatory hearing. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/14/2015

- 15 -