J. A10006/17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :     IN THE SUPERIOR COURT OF
                                  :           PENNSYLVANIA
                  v.             :
                                    :
ALEKSANDE SHWARZ,          :
                                    :
          Appellant     :       No. 3563 EDA 2015

Appeal from the Judgment of Sentence July 21, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0004424-2011

BEFORE: DUBOW, J., SOLANO, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY DUBOW, J.:                **FILED MAY 31, 2017**

Appellant, Aleksande Shwarz, appeals from the Judgment of Sentence entered by the Philadelphia County Court of Common Pleas following his convictions after a jury trial of Obstructing Administration of Law or Other Governmental Function, Unsworn Falsification to Authorities, False Reports to Law Enforcement Authorities, Official Oppression, and False Imprisonment.[1]  After careful review, we affirm on the basis of the trial court's August 31, 2016 Opinion.

The underlying facts, as gleaned from the certified record and the trial court's 1925(a) Opinion, are as follows.  On March 4, 2010, the general manager of a U-Haul in Philadelphia ("Complainant"), contacted the Philadelphia Police Department about a previously stolen company vehicle.

---

[1] 18 Pa.C.S. § 5101; 18 Pa.C.S. § 4904; 18 Pa.C.S. § 4906; 18 Pa.C.S. § 5301; and 18 Pa.C.S. § 2903, respectively.

A towing company had returned the stolen vehicle from Delaware County to the Philadelphia U-Haul, and company protocol required the Complainant to report this information to police in order to remove the vehicle from the database of stolen vehicles.[2]  The Complainant had previously called police when this had happened and each time the police officers would quickly resolve the issue.

When Philadelphia Police Officers Aleksande Shwarz ("Appellant") and John Loisch responded to the U-Haul, they informed the complainant—incorrectly—that they could not help him because the vehicle had been recovered in another county.  The officers then told the Complainant to contact Delaware County police instead.

The Complainant grew frustrated and asked for a supervisor and for both Appellant and Officer Loisch's badge numbers so that he could include this information in a formal complaint.  While Officer Loisch complied, Appellant refused to provide his badge number.  The Complainant obtained Appellant's badge number by looking at Appellant's uniform, and then left the building to record the patrol car number.  Appellant and Officer Loisch followed the Complainant outside.  While Officer Loisch entered the patrol car, Appellant stood near the Complainant as he recorded the officers' patrol

---

[2] U-Haul could not rent out the vehicle while it was on the stolen vehicle list because customers would be subject to potential police stops.

car number.  Appellant and the Complainant exchanged sarcastic comments, and an altercation ensued, as follows:

> Complainant then began walking back towards the front door of U-Haul when [A]ppellant stated "hey" and reached for [C]omplainant's arm.  While [A]ppellant went to grab [C]omplainant, [C]omplainant dropped his right shoulder in a ducking motion and stated[,] "don't touch me."  Complainant continued to make his way back to the front door of U-Haul while [A]ppellant repeatedly stated "hey, hey."  As [C]omplainant opened U-Haul's front door, [A]ppellant took control of [C]omplainant by the neck and slammed [C]omplainant against the door.  Appellant instructed [C]omplainant to get down on his stomach and stated that [C]omplainant had "hit a police officer."  Complainant complied with [A]ppellant's request to get down, at which time [C]omplainant was taken into police custody.
>
> Complainant was transported to a police station two (2) miles from the U-Haul location and placed in a holding cell.  Detective Lawrence Grimm of the Philadelphia Police Department Northeast Detectives Division (hereinafter "Detective Grimm") subsequently took statements from both [C]omplainant and [A]ppellant regarding what had transpired at U-Haul.  On the basis of the interviews, [C]omplainant was charged with [S]imple [A]ssault and [R]ecklessly [E]ndangering [A]nother [P]erson.  Approximately twenty-two (22) hours after the instant incident began, [] [C]omplainant [] was [] released [and police dropped all charges.]

Trial Court Opinion, dated 8/31/16, at 4 (footnotes and citations omitted).

Appellant was then charged with Obstructing Administration of Law or Other Governmental Function, Unsworn Falsification to Authorities, False Reports to Law Enforcement Authorities, Official Oppression, and False Imprisonment.  On May 18, 2015, a jury found Appellant guilty of the above-stated offenses.

On July 21, 2015, the trial court sentenced Appellant to a term of time-served to 23 months' imprisonment with immediate parole. Appellant timely filed a Post-Sentence Motion, which the trial court denied on November 16, 2015.

On November 24, 2015, Appellant filed a Notice of Appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents one issue for our review:

> Did the lower trial court err in refusing to instruct the jury as requested by the Appellant that any contact however slight between the complainant and the Appellant police officer could be sufficient to establish probable cause to arrest the complainant for the offense of simple assault?

Appellant's Brief at 3.

Our standard of review in assessing a trial court's jury instruction is as follows:

> When evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper. We further note that[] it is an unquestionable maxim of law in this Commonwealth that a trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error.

***Commonwealth v. Antidormi***, 84 A.3d 736, 754 (Pa. Super. 2014). "The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal

- 4 -

unless the Appellant was prejudiced by that refusal." ***Commonwealth v. Sandusky***, 77 A.3d 663, 667 (Pa. Super. 2013).

The Honorable Edward C. Wright, sitting as the trial court, has authored a comprehensive, thorough, and well-reasoned Opinion, citing to the record and relevant case law in addressing Appellant's claim. ***See*** Trial Court Opinion, 8/31/16, at 5-9 (concluding it properly rejected Appellant's jury instruction because: (1) Appellant requested a jury instruction on irrelevant civil principles of tort law, which "would have misled the jury regarding a material issue[;]"[3] and (2) the trial court provided additional instructions on probable cause at Appellant's request where appropriate, including supplementing the standard jury instruction defining Official Oppression). The record supports the trial court's conclusions and we discern no abuse of discretion or inaccurate statement in the jury instruction. We affirm on the basis of the trial court's August 31, 2016 Opinion.

The parties are instructed to attach a copy of the trial court's August 31, 2016 Opinion to all future filings.

---

[3] Appellant strategically decided not to request that the trial court provide the jury with a definition of Simple Assault using the standard criminal jury instruction. That standard criminal jury instruction includes additional elements regarding criminal intent, which Appellant carefully omitted from his nonstandard civil instruction that he submitted to the trial court. This transparent request for a nonstandard instruction shows the underlying strategic decision, which had little to do with clarifying relevant legal principles for the jury.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/31/2017

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH

v.

Aleksande Shwarz
Appellant

Wright, J.
August 30, 2016

**FILED**

AUG 3 1 2016

Criminal Appeals Unit
First Judicial District of PA

:

:

SUPERIOR COURT DOCKET NO.
3563 EDA 2015

LOWER COURT DOCKET NO.
CP-51-CR-0004424-2011

## OPINION

Aleksande Shwarz (hereinafter "appellant") appeals his criminal convictions subsequent

to a jury trial, pursuant to the Pennsylvania Crimes Code (Code), Act of Dec. 6, 1972, P.L. 1482,

as amended, 18 Pa. C.S. §§101-9402.

### I. PROCEDURAL HISTORY

On May 18, 2015, pursuant to the Code, a jury found appellant guilty of: Section 5101;[1]

Section 4904;[2] Section 4906;[3] Section 5301;[4] and, Section 2903.[5] Sentencing was deferred until

---

[1] Act of Dec. 6, 1972, P.L. 1482, 18 Pa. C.S. §5101, entitled "Obstructing administration of law or other governmental function," provides:

> A person commits a misdemeanor of the second degree if he intentionally obstructs, impairs or perverts the administration of law or other governmental function by force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act, except that this section does not apply to flight by a person charged with crime, refusal to submit to arrest, failure to perform a legal duty other than an official duty, or any other means of avoiding compliance with law without affirmative interference with governmental functions.

18 Pa. C.S. §5101.

[2] Act of Dec. 6, 1972, P.L. 1482, as amended, 18 Pa. C.S. §4904, entitled "Unsworn falsification to authorities," provides, in pertinent part:

> (a) *In general.* – A person commits a misdemeanor of the second degree if, with intent to mislead a public servant in performing his official function, he:
> (1) makes any written false statement which he does not believe to be true[.]

18 Pa. C.S. §4904(a)(1).

[3] Act of Dec. 6, 1972, P.L. 1482, as amended, 18 Pa. C.S. §4906, entitled "False reports to law enforcement authorities," provides, in pertinent part:

> (b) *Fictitious reports.* – Except as provided in subsection (c), a person commits a misdemeanor of the third degree if he:
> (1) reports to law enforcement authorities an offense or other incident within their concern knowing that it did not occur[.]

---

1

July 21, 2015, pending a Presentence Investigation Report. On July 21, 2015, this court sentenced appellant to time served to twenty-three (23) months at a County correctional facility with immediate parole.[6] On July 24, 2015, appellant timely filed a post-sentence motion seeking a new trial, whereupon on November 16, 2015, this court denied said motion. On November 24, 2015, appellant timely filed the instant appeal with the Superior Court of Pennsylvania (hereinafter "Superior Court"), which appeal Superior Court docketed at 3563 EDA 2015.

## II.    FACTUAL BACKGROUND

On March 4, 2010, at approximately 4:00 PM, complainant, a General Manager at U-Haul Moving and Storage Center (hereinafter "U-Haul") located at 7750 Roosevelt Boulevard in Philadelphia, PA, contacted the Philadelphia Police Department regarding a stolen company vehicle. 5/14/2015 Notes of Testimony (N.T.) at 47. The vehicle had been recovered in Tinicum Township, Delaware County, and it was towed back to U-Haul by a Delaware County towing company. Id. at 48. When the vehicle arrived back at U-Haul, complainant called 9-1-1 as required by company protocol, to report that although the vehicle had been previously stolen the vehicle was now recovered. Id. at 50. Approximately half an hour later, Philadelphia Police

---

18 Pa. C.S. §4906(b)(1).

[4] Act of Dec. 6, 1972, P.L. 1482, 18 Pa. C.S. §5301, entitled "Official oppression," provides, in pertinent part:
    A person acting or purporting to act in an official capacity or taking advantage of such actual or purported capacity commits a misdemeanor of the second degree if, knowing that his conduct is illegal, he:
    (1) subjects another to arrest, detention, search, seizure, mistreatment, dispossession, assessment, lien or other infringement of personal or property rights[.]
18 Pa. C.S. §5301(1).

[5] Act of Dec. 6, 1972, P.L. 1482, as amended, 18 Pa. C.S. §2903, entitled "False imprisonment," provides, in pertinent part:
    (a) Offense Defined. – Except as provided under subsection (b) or (c), a person commits a misdemeanor of the second degree if he knowingly restrains another unlawfully so as to interfere substantially with his liberty.
18 Pa. C.S. §2903(a).

[6] Specifically, this court sentenced appellant to time served to twenty-three (23) months on each of the five (5) crimes for which he was found guilty; all five (5) sentences were concurrent to each other.

2

Officers appellant, and John Loisch (hereinafter "Officer Loisch") arrived at the U-Haul location.[7] Id.

After parking their marked patrol car outside of the U-Haul entrance, Officer Loisch proceeded inside U-Haul and approached the front counter. Id. at 116, 117, 119. Complainant, who was with a customer at the time, immediately acknowledged Officer Loisch and began speaking with him. Id. at 52. Complainant explained the circumstances regarding the stolen vehicle and told Officer Loisch that a police report was necessary to remove the subject vehicle from the stolen car list. Id. at 53. Approximately two (2) to three (3) minutes into complainant's conversation with Officer Loisch, appellant entered U-Haul and joined complainant and Officer Loisch at the front counter. Id. at 52. Officer Loisch stated that he was unable to assist complainant, which resulted in complainant's frustration whereupon complainant requested a supervisor. Id. at 53. At this point, Officer Loisch instructed complainant to call 9-1-1 for a supervisor. Id. Complainant then requested that the officers provide him with their names and badge numbers. Id. at 53-54. While Officer Loisch complied with this request, appellant did not. Id. at 54. Complainant was however able to obtain appellant's badge number from his police uniform. Id. At the conclusion of this interaction with appellant and Officer Loisch, complainant decided to exit U-Haul to record the number located on the officers' patrol car outside. Id. Upon complainant's exit from U-Haul, Officer Loisch and appellant followed him outside. Id. at 55.

Once outside U-Haul, Officer Loisch approached the passenger side of the patrol car and began to get into the patrol car. Id. At this time, complainant went to the rear of the patrol car to record the license plate number. Id. As this was taking place, appellant stood on a loading dock

---

[7] At the time of the instant matter, appellant had been employed as a Philadelphia Police Officer for approximately twenty-two (22) years; appellant was discharged in January 2011. Id. at 151-52.

3

located immediately beside the patrol car and stated "I hope you get the numbers clearly." Id. Complainant sarcastically responded, "Thanks for all your help." Id. at 56. Complainant then began walking back towards the front door of U-Haul when appellant stated "hey" and reached for complainant's arm. Id. at 57. While appellant went to grab complainant, complainant dropped his right shoulder in a ducking motion and stated "don't touch me." Id. Complainant continued to make his way back to the front door of U-Haul while appellant repeatedly stated "hey, hey." Id. at 58. As complainant opened U-Haul's front door, appellant took control of complainant by the neck and slammed complainant against the door. Id. at 59. Appellant instructed complainant to get down on his stomach and stated that complainant had "hit a police officer." Id. Complainant complied with appellant's request to get down, at which time complainant was taken into police custody. Id. at 60.

Complainant was transported to a police station two (2) miles from the U-Haul location and placed in a holding cell. Id. at 63-64. Detective Lawrence Grimm of the Philadelphia Police Department Northeast Detectives Division (hereinafter "Detective Grimm") subsequently took statements from both complainant and appellant regarding what had transpired at U-Haul. 5/15/15 N.T. at 19, 25. On the basis of the interviews, complainant was charged with simple assault and recklessly endangering another person. Id. at 31. Approximately twenty-two (22) hours after the instant incident began, a turnkey notified complainant that the charges against him would be dropped, and that he was being released. 5/14/15 N.T. at 68.

4

## III. ISSUES

Appellant raises the following issue on appeal:

1. The trial court erred by refusing to instruct the jury that the Defendant police officer could properly arrest the complainant upon any adverse contact with the officer, however slight.

See Appellant's March 8, 2015, Statement of Matters Complained Of pp.1-2.


## IV. DISCUSSION

### A. Refusal of Jury Instruction

Appellant avers that this court erred by refusing to instruct the jury that appellant police officer could properly arrest complainant upon any adverse contact with the officer, however slight. Id.

When reviewing a challenge to the trial court's refusal to give a specific jury instruction the Superior Court has set forth the following:

> [I]t is the function of this [C]ourt to determine whether the record supports the trial court's decision. In examining the propriety of the instructions a trial court presents to a jury, our scope of review is to determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. A jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error. Consequently, the trial court has wide discretion in fashioning jury instructions. The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the Appellant was prejudiced by that refusal.

Commonwealth v. Thomas, 904 A.2d 964, 970 (Pa. Super. 2006) (citations omitted). Moreover, "[t]he key inquiry is whether the instruction on a particular issue adequately, accurately and clearly presents the law to the jury, and is sufficient to guide the jury in its deliberations." Commonwealth v. Sneeringer, 668 A.2d 1167, 1171 (Pa. Super. 1995), appeal denied, 545 Pa. 651 (1996). Finally, the Superior Court has explicitly stated that "[i]n reviewing jury

5

instructions to determine whether reversible error has been committed by a trial court, we consider the charge as a whole. Error will not be predicated on isolated excerpts. Rather, it is the general effect of the charge that controls." Commonwealth v. Shoup, 620 A.2d 15, 22 (Pa. Super. 1993) (citations omitted).

On May 18, 2015, this court held a charging conference during which appellant and the Commonwealth were given an opportunity to present suggested jury instructions. 5/18/15 N.T at 4. At this time, appellant requested that an instruction regarding probable cause be provided to the jury. Specifically, appellant sought an instruction which stated that "intentional contact by the complainant upon the police officer, however slight, would support probable cause if it was intentional." Id. at 29. After hearing the respective positions of appellant and the Commonwealth, this court ruled that appellant's instruction would not be provided to the jury. Id. at 31. However, this court permitted further instruction on probable cause to be added to section 15.5301 of the Pennsylvania Suggested Standard Jury Instructions, entitled "Official Oppression." Id. at 27. The first addition was "an arrest by defendant would be lawful if supported by probable cause," while the second addition was a definition of probable cause provided by appellant:

> Probable cause exists when the facts and circumstances which are within the knowledge of the police officer at the time of arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime.

Id. at 31.[8]

In support of appellant's position, he directs this court to his October 29, 2015, Memorandum of Law (hereinafter "Memorandum"), which was submitted with appellant's post-

---

[8] The definition of probable cause herein was provided by appellant at trial in a document entitled "Defendant's Points for Charge."

sentence motion for a new trial. In the Memorandum, appellant asserts the following: "As stated in the leading case of Cohen v. Lit Brothers, 70 A.2d 419, 421 (Pa. 1950), an assault occurs when the perpetrator engaged in an intentional attempt to do an injury to the person of another, even though the force used upon the victim is done 'in ever so small a degree.'" See Memorandum of Law, attached as Exhibit A, p.1.

Appellant's reliance on Cohen is a misapplication of law for two (2) key reasons. First, Cohen is a civil cause of action in which the parents of a minor sought to recover damages for assault, battery and false imprisonment. Cohen at 420. This is significant as appellant has drawn upon standards from a civil cause of action and is attempting to apply these standards to a criminal proceeding. The Restatement Second of Torts § 21 entitled "Assault," defines civil assault: "(1) An actor is subject to liability to another for assault if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension." Restatement (Second) of Torts § 21 (1965). Contrastingly for criminal matters, Section 2701 of the Code entitled "Simple Assault," defines criminal assault: "(a) a person is guilty of assault if he: (3) attempts by physical menace to put another in fear of imminent serious bodily injury." Act of Dec. 6, 1972, P.L. 1482, as amended, 18 Pa. C.S. §2701(3).[9] By comparing the definition of assault in a civil cause of action to the definition of criminal simple assault, it is evident that assault defined in the civil realm varies considerably from its definition in criminal law. Therefore, appellant's attempt to furnish the jury with an instruction rooted in civil law tenets is misguided.

---

[9] This court notes that while the charges of simple assault and recklessly endangering another person were initially recommended, the Philadelphia District Attorney's Office ultimately declined to pursue said charges. 5/15/2015 (N.T) at 31; 5/14/2015 (N.T.) at 68.

7

Second, even if utilization of the definition of civil assault was deemed to be acceptable, appellant has inaccurately quoted from the very case that he cites. The pertinent section of Cohen states "[a]ssault is an intentional attempt by force to do an injury to the person of another, and a *battery* is committed whenever the violence menaced in an assault is actually done, *though in ever so small a degree*, upon the person" (emphasis added). Cohen at 421. This court's review of appellant's argument grounded in Cohen, reveals that appellant has engaged in a misstatement of law. Specifically, appellant has erroneously combined the principles regarding civil assault and battery provided in Cohen to form the crux of his averment. The specific "civil" language that appellant sought to include in his proposed criminal jury instruction is not relevant.

The Superior Court has held that "[t]he key inquiry is whether the instruction on a particular issue adequately, accurately and clearly presents the law to the jury, and is sufficient to guide the jury in its deliberations." Sneeringer at 1171. Moreover, "[a] jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue." Thomas at 964. As established above, the inclusion of appellant's suggested jury instruction grounded in civil law would not have reflected an accurate and clear presentation of the relevant law to the jury. As such, utilization of appellants proposed instruction would have misled the jury regarding a material issue. By choosing to exclude appellant's requested instruction grounded in civil law, this court ensured that the charge provided would not be erroneous. Moreover, appellant's instruction on probable cause that this court permitted, provided the jury with the necessary information needed to guide their deliberations.

8

This court duly exercised the wide discretion that is vested in the trial court when fashioning jury instructions. Appellant's contention that this court erred in refusing to instruct the jury as per appellant's request is thus without merit.

## V.   CONCLUSION

In light of the foregoing, this Court's decision should be affirmed.

BY THE COURT:

_____
EDWARD C. WRIGHT                    J.