J-A09007-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                      : PENNSYLVANIA
                                                      :
                          v.                          :
                                                      :
                                                      :
BRENDAN J. CARTER                       :
                                                      :
                    Appellant                    :    No. 1366 MDA 2021

Appeal from the Judgment of Sentence Entered June 3, 2021
In the Court of Common Pleas of Luzerne County
Criminal Division at No(s):  CP-40-CR-0001982-2019,
CP-40-CR-0001983-2019, CP-40-CR-0001984-2019,
CP-40-CR-0001985-2019, CP-40-CR-0001986-2019,
CP-40-CR-0001987-2019, CP-40-CR-0001988-2019,
CP-40-CR-0001989-2019, CP-40-CR-0001990-2019

BEFORE:  PANELLA, P.J., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY PANELLA, P.J.:          **FILED: JULY 10, 2023**

Brendan Carter appeals the judgment of sentence imposed by the Luzerne County Court of Common Pleas after a jury convicted him of, among other offenses, corruption of minors, involuntary deviate sexual intercourse ("IDSI") and possession of child pornography. The case involved nine victims, all of whom were minors and band students of Carter's while he was the band director at Pittston Area High School and the percussion adviser at the Wyoming Area School District when the offenses occurred. The victims reported Carter had engaged in inappropriate behavior, including sexual games and touching, and had repeatedly exposed himself to band members and requested digital pictures of the victims' penises. On appeal, Carter raises or attempts to raise multiple claims, including that the trial court erred by

denying several motions: a suppression motion, a motion *in limine* to preclude the admission of evidence from social media, the motion for a continuance he filed on the Friday before trial was set to begin, and a motion for a jury view. He also claims the trial court erred by determining he was a sexually violent predator ("SVP"). After reviewing the record, the parties' briefs, and the trial court's thorough and well-reasoned opinion, we affirm.

As the pretrial procedural background is central to several of Carter's claims, we recount it in some detail here. The mother of one of Carter's victims, C.C., contacted Pittston Area High School's school resource officer, Michael Boone, on October 22, 2018, to report allegations C.C. had made involving Carter. Specifically, C.C. told his mother about inappropriate games that had been played at school and on the band bus when he had been a band member, and that Carter had asked C.C. to send explicit photos to him.

Officer Boone immediately contacted Detective Charles Balogh of the Luzerne County District Attorney's Office. The two began investigating the allegations that same day, and went to Pittston Area High School and spoke to students, including victims A.T. and C.E. Officer Boone and Detective Balogh learned Carter was scheduled to meet with the principal about an unrelated matter later that day at approximately 5 p.m., and they waited in the principal's office for Carter.

Once Carter arrived at the school, the principal brought Carter to his office, and left him with the officers. The officers asked Carter if he knew why they were there, and Carter surmised it was about an issue related to missing funds. He spoke

to the officers about that issue, and the officers then advised Carter they were actually there to discuss allegations of inappropriate behavior that several band members had made against him.

Carter agreed to speak with the officers about those allegations, and signed a constitutional waiver form waiving his **Miranda**[1] rights at 6 p.m. **See** N.T. Omnibus Motions Hearing, 6/9/2020, at 36-37. During the conversation, Carter told the officers he had received naked images on his cell phone of former students after they had graduated high school, but remained adamant that he did not have any naked images of current students on his cell phone. **See id.** at 41. Carter agreed to allow Detective Balogh to review the contents of the phone. **See id.** at 39-40.

Carter informed the detective that he had images stored in his Snapchat application in the folder called "for my eyes only" and provided Detective Balogh with the folder's passcode. **See id.** at 42-44.[2] There were numerous pictures of males with their penises exposed in the folder, one of which matched the description given to Detective Balogh earlier by A.T., taken when A.T. was 17 years old. **See id.** at 44, 62. Detective Balogh also found a picture in the folder of C.E. with his penis exposed, also taken when he was a minor. **See id.** at 44-45.

_____

[1] **See Miranda v. Arizona**, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

[2] The "for my eyes only" folder was described by a defense expert as a "feature of Snapchat where you can store photos. It's a built-in function, a built-in folder of Snapchat where you can store photos that you have on your Snapchat story that you can only view yourself. There's a passcode that blocks anybody else from viewing it." N.T. Motions Hearing, 9/28/2020, at 74.

At around 7 p.m., Detective Balogh asked Carter if he could audio record a statement from Carter. *See id.* at 38, 57-58. Carter agreed. Carter affirmed at the beginning of the recording that he had signed the constitutional waiver form and understood his constitutional rights, and explicitly stated he was agreeing to talk with the officers and have his statement audio recorded. *See id.* at 38. The recording started at 6:56 p.m., and ended at 8:03 p.m. *See id.* at 68.

Carter made several admissions while talking to the police. He "admitted that he did solicit images of a current student [' s penis from a female student.] In addition, [Carter] told investigators that he was forced by a few students to expose himself in the band room closet. [Carter] also told them that he and two students ejaculated into a pudding cup and gave it to another student with the intention of having him eat it." Trial Court Opinion, 2/14/2022, at 55.

Towards the end of the interview, at 8:20 p.m., Carter signed a warrantless search consent form for the phone so that it could be forensically analyzed. *See* N.T. Omnibus Motions Hearing, 6/9/2020, at 61-62. Detective Balogh put the phone on airplane mode, and placed the phone into evidence. *See id.* at 44-45.

Carter left the school after the interview, though he was advised not to return to school property. However, on July 29, 2019, the Commonwealth filed several informations charging Carter with 22 offenses against nine minor victims. The trial court listed the individual charges associated with each of the nine victims, *see* Trial Court Opinion, 2/14/2022, at 1-2, but the charges included corruption of minors, criminal solicitation to commit possession of child pornography, IDSI, sexual assault,

school – intercourse/sexual contact with student, indecent assault without consent of other, indecent exposure, possession of child pornography, and criminal use of a communication facility. The matters were consolidated for trial. After the trial court granted two defense motions for a continuance, trial was eventually set for January 13, 2020.

Carter, however, filed another motion to continue trial on January 6, 2020. He also filed multiple omnibus pretrial motions on the same day. Those motions included: a motion to compel discovery of, *inter alia*, Carter's cell phone for forensic examination; a motion to suppress the statements and the evidence the police obtained from Carter's interview on October 22, 2018; a motion *in limine* seeking to exclude "electronic evidence, alleged telephone text messages and photographs, and, alleged internet posts, internet messages and photographs," Omnibus Pre-Trial Motions Including, *Inter Alia*, Motion to Compel Discovery and Motion *in Limine*, 1/6/2020, at 14; and a motion to take the jury to view the locations where the abuse allegedly took place.

The Commonwealth filed a response, averring that it would not relinquish control over Carter's cell phone given the risk that would create for evidence tampering, and that it would not disseminate the images of child pornography on the phone. The response continued:

> The discovery provided documented that the Commonwealth had the cell phone in its possession and that a forensic analysis had been done on the phone. … [Carter] *never once* requested to view the cell phone or results of the forensic analysis of the cell phone prior to this filing. Had [Carter] done so, he would have been afforded the opportunity to view the cell phone and its contents at the Luzerne County District

Attorney's Office. … In fact, as of the date of the filing of this Answer, [Carter] *still has not requested* to view the cell phone or its contents, despite repeated contacts with members of the District Attorney's Office involved in this case. Additionally, [Carter] also has not responded to the Commonwealth's request dated January 13, 2020[, for] the name and contact information of the expert that [Carter] alleged to have for this case.

Commonwealth's Answer to Defendant's Omnibus Pre-Trial Motions, 2/12/2020, at 2-3 (unpaginated) (emphasis in original); **see also id.** at 3 (unpaginated) ("the defense may, at any time, contact the District Attorney's Office to set up a time to view the cell phone or its contents.").

The court granted Carter's motion for a continuance and eventually held a hearing on the omnibus motions on June 9, 2020. The Commonwealth reiterated at the hearing that it had sent correspondence to defense counsel on January 13, 2020 informing counsel that the Commonwealth would not release Carter's phone but a defense expert could arrange to view it at the District Attorney's office. **See** N.T., 6/9/2020, at 9. The Commonwealth also stated it sent another email later that same day asking for the name of the expert the defense wished to use to examine the forensic analysis of the cell phone, so that arrangements could be made, but the Commonwealth did not receive a response. **See id.** at 11.

Defense counsel responded that the defense had finally hired an expert the day before the hearing, *i.e.* June 8, 2020, and would arrange for the expert to examine the phone. **See id.** at 12. The court admonished counsel that the defense needed to make that happen, because the case was going to go to trial on the scheduled date in September 2020. **See id.** at 12-13. Counsel agreed. **See id.**

- 6 -

As for the motion *in limine*, defense counsel asked the court to hold the motion in abeyance because it was "going to depend on the forensic analysis from the cell phone." *Id.* at 25. The court granted the defense request, and deferred the motion *in limine* until trial. *See id.* at 27. Likewise, defense counsel also asked the court to defer the motion for a jury view as the Commonwealth had given the defense photos and a video of the crime scene that defense counsel had not yet viewed but indicated may be sufficient to alleviate the need for a jury view. *See id.* at 7, 27-28. The court agreed to defer the motion. *See id.* at 30.

The court then heard testimony regarding the motion to suppress Carter's statements and the evidence obtained from the October 22, 2018 interview, specifically from Detective Balogh and then from Carter. The court ultimately denied the suppression motion on August 20, 2020. Trial was set to begin on Monday, September 28, 2020.

On Friday, September 25, 2020, defense counsel filed a motion to continue the trial and a motion for sanctions. The motions averred, in essence, that the Commonwealth had failed to permit the defense expert access to Carter's cell phone for forensic evaluation and a continuance was necessary to allow this to happen. The court held a hearing on the motion on September 28, 2020, and heard from four witnesses. We note the relevant highlights from that testimony.

David Yarnell, the defense expert, testified Carter hired him to review electronic evidence, specifically from Carter's cell phone. *See* N.T. Motions Hearing, 9/28/2020, at 5-6. Arrangements were made for Yarnell to review the electronic

evidence on September 17, 2020, at the District Attorney's office in the courthouse, but Yarnell was prevented from entering the building due to the COVID-19 protocol then in place. *See id.* at 7.

Five days later, on September 22, 2020, Yarnell sent his employee, Dylan Sperber, to the courthouse to review the evidence. *See id.* at 9. Yarnell complained that Sperber was denied access to the cell phone itself, *see id.* at 11, though Yarnell admitted he had reviewed an email from the Commonwealth sent on September 14, 2020, which stated that the defense expert would not be given access to Carter's cell phone, *see id.* at 43. However, the email explained that the expert could review the Commonwealth's forensic image of the phone. *See id.*

Yarnell conceded Sperber was in fact given access to the Commonwealth's forensic image of the phone. *See id.* at 13; 32-33 (Yarnell agreeing with the description of "image" as being the "information that was pulled off the phone during the forensic analysis conducted by Detective Balogh".) Neither Carter's Snapchat nor its "for my eyes only" folder was in the forensic image, though again, Yarnell acknowledged that he and Sperber were made aware of that. *See id.* at 18, 38-39. He specifically acknowledged the Commonwealth had sent correspondence to the defense on August 28, 2020, which stated there were two images in the "for my eyes only" folder which were relevant, and that the "for my eyes only" folder contents were not contained in the forensic image. *See id.* at 38-39.

Yarnell conceded Sperber never asked to look at the "for my eyes only" folder or the Snapchat application on September 22. *See id.* at 34.

Sperber also testified. He explained that, when he arrived at the courthouse on September 22, he encountered computer issues and also had to wait while the software he requested to view the data was installed. He stated that neither the Snapchat application nor the "for my eyes only" folder was on the extraction image he was able to view with the updated software. *See id.* at 74-75. He stated he did not ask the officers to show him the two images at issue on the cell phone. *See id.* at 82. He testified he left the courthouse at approximately 4:30 p.m. and that nobody asked him to leave; he made the decision to leave himself. *See id.* at 80-82.

Detective Balogh also testified. He agreed that Snapchat's "for my eyes only" folder was not on the image he had extracted from Carter's cell phone. *See id.* at 87. He explained this was because "the application is separate. Sometimes the software does not extract that information from that application." *Id.* at 87. Sperber did not ask to see what was in the "for my eyes only" folder. *See id.* He testified Sperber left the courthouse on his own volition at 4:40 p.m. and that he never asked Sperber to leave. *See id.* at 87-88, 96.

Following the close of testimony, defense counsel argued they were not seeking a sanction *per se* but rather, were requesting access to Carter's cell phone. Defense counsel argued the trial should be continued until the defense expert was allowed such access. *See id.* at 126. The Commonwealth responded that it had "bent over backwards to get [the defense] expert in here, which finally, after many attempts, was done on Tuesday [September 22]." *Id.* at 128. Then, the defense did

not alert the Commonwealth that it did not get the access it alleged it required until the defense filed the motion for sanctions and a continuance days later, on the Friday before trial, September 25.

The trial court denied both the motion for sanctions and the motion for a continuance. It stated:

> There was a trial date for January 6th. There was an 11th hour omnibus filed. The trial ended up getting continued. And here we are on the eve of trial and we still have the Defense complaining about this phone.
>
> Look, this is not a case involving voluminous digital discovery … We have two photos at issue. Two photos at issue. And there is no question in the court's mind that the Defendant has had more than ample opportunity to get whatever digital discovery they sought, okay.

*Id.* at 131.

The matter proceeded to trial. All nine victims testified. As the detailed facts underlying the offenses, which are disturbing, are relevant only generally to Carter's SVP claim, we merely provide a general overview of the testimony.

The victims' testimony included testimony that: Carter had exposed himself to the victims on multiple occasions, and instructed the victims to expose themselves to each other while in his presence; Carter had the victims play a number of different inappropriate games, including truth or dare, the "nervous game," and a game called "Are you?," which meant "Are you circumcised?," after which Carter would ask the responder to "prove it" by exposing his penis.

There was also testimony that: Carter instructed the victims to masturbate into pudding cups, onto cookies and into their hands before slapping another; Carter

asked the victims to send or show him naked pictures of them or others and that they did so; and Carter talked about and ranked the sizes of penises. One victim testified that Carter "dared" him to perform oral sex on him, which he did.

Detective Balogh also testified for the Commonwealth. As he did at the suppression hearing, Detective Balogh testified that Carter agreed to talk with him and that he read Carter his *Miranda* warnings from a constitutional waiver form before interviewing him about the allegations. *See* N.T. Jury Trial, 9/30/2020, at 458, 460. 462. Detective Balogh recounted Carter affirmed he understood the warnings, initialed them, and then signed the form and said he was willing to talk to the officers. *See id.* at 460, 462-463. Detective Balogh explained Carter agreed to allow him to look at his cell phone, and once he opened the "for my eyes only" folder on Snapchat with the passcode given to him by Carter, he saw numerous images of penises and naked men. *See id.* at 471-474, 487.

The detective testified he recognized that one of those explicit photos was of victim A.T. based on his earlier discussion with him. *See id.* at 489-490. He also found a picture of victim C.E. on the phone. *See id.* at 505. Detective Balogh re-interviewed A.T. and C.E. on October 26, 2018, and they identified the photos as being images taken of them when they were minors. *See id.* at 504-505. These two photos were shown to the jury.

Carter testified on his own behalf. He generally denied the allegations. He did admit he exposed himself to band students on one occasion, but claimed they forced him to do it. He also admitted he had the explicit image of A.T. on his phone, but

he insisted it was taken and sent after A.T. turned 18. **See** N.T. Jury Trial, 10/1/2020, at 730-733. As for the picture of C.E. shown to the jury, he maintained he did not put that image on his phone. **See id.** at 742.

Carter admitted the constitutional waiver form indicated he had signed it at 6 p.m., but he claimed he did not actually sign the form until 8:30 p.m. **See id.** at 718-719. He maintained the officers did not read his constitutional rights to him until after the interview was completed. **See id.** at 760. He acknowledged he is heard agreeing at the beginning of the audio-recorded statement that the investigators had gone over his constitutional rights with him, and that he understood and was waiving those rights, but claimed he had been instructed to say that. **See id.** at 760-762.

The jury convicted Carter of all charges filed against him. Following a hearing on June 3, 2021, the trial court found that Carter was an SVP. Then, following a sentencing hearing, the court sentenced him to an aggregate term of 84 to 168 months' imprisonment. Carter filed post-sentence motions, which were denied, and he filed a timely notice of appeal.

The court directed Carter to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Although Carter filed a statement, it was not concise, and instead raised 31 alleged errors. **See** Trial Court Opinion, 2/14/2022, at 35-41. In response, the trial court issued an 87-page Pa.R.A.P. 1925(a) opinion. The court found as an initial matter that many of Carter's issues were waived as

they were too vague to allow for review. It found the remaining issues were meritless.

On appeal, Carter has filed a brief that is difficult to follow. He asserts he is focusing on "only" 28 of the 31 errors alleged in his Rule 1925 statement, and then lists those 28 alleged errors. *See* Appellant's Brief at 13-17. However, he presents six questions in his "Statement of Questions Involved????" section of his brief. *See* Appellant's Brief at 5. His argument section then addresses those questions, and some additional ones, in a different order than they are presented in the statement of questions section. We will address his claims in the order in which they are raised in his argument section.

In his first claim, Carter essentially alleges the trial court erred in denying his motion to suppress his statements given at the October 22, 2018 interview as they were obtained in violation of his constitutional rights. According to Carter, his statements were involuntarily given because he was questioned over a three-hour period and threatened by Detective Balogh, and was not advised of his constitutional rights until after the interview was over. This claim fails.

In rejecting this claim, the trial court first noted that *Miranda* warnings are only required before an interview when a person is in police custody. A person is in custody for purposes of a custodial interrogation, the court explained, when the person is physically deprived of his freedom in any significant way or reasonably believes his freedom of action or movement is restricted by the interrogation. *See* Trial Court Opinion, 2/14/2022, at 58, *citing Commonwealth v. DiStefano*, 782

A.2d 574, 579 (Pa. Super. 2001). "Police detentions become custodial when under the totality of the circumstances the conditions and/or duration of the detention become so coercive as to become the functional equivalent of arrest." *Id.*

The trial court found Carter was not in custody when he was interviewed by Detective Balogh and Officer Boone. The court explained:

> Balogh testified credibly about the circumstances of the interview. [Carter] was interviewed at the principal's office of the high school where [Carter] arrived to teach band practice. The principal brought him to the office and left him with the investigators. The door was closed for privacy because of the sensitive nature of the topics that were to be discussed. The investigators told [Carter] why they wanted to speak to him and he agreed to talk with them. Balogh was in plain clothes. The Commonwealth's evidence reflects that the tone of the interview was cordial. [Carter] never asked to leave, was not restrained from doing so, and was not threatened. The totality of the circumstances do not indicate coercion so as to constitute the functional equivalent of an arrest.

Trial Court Opinion, 2/14/2022, at 58-59.

We find no error in the court's conclusion that Carter was not in custody during his interview with the officers, and therefore that the officers were not required to give Carter *Miranda* warnings. Carter does not address, much less dispute, the court's finding that he was not in police custody, but he does make a general allegation that Detective Balogh intimidated and threatened him, and recites his testimony at the suppression hearing in support of this contention. He also maintains that Detective Balogh was not credible. However, it is clear the trial court credited Detective Balogh's testimony, and not Carter's, as was its prerogative to do. *See Commonwealth v. Yorgey*, 188 A.3d 1190, 1198 (Pa. Super. 2018) (stating that credibility determinations are within the exclusive province of the suppression

court). As such, Carter does not provide any persuasive argument to disturb the court's conclusion that he was not in police custody.

Carter does claim he did not voluntarily waive his constitutional rights. Even though the trial court found that Detective Balogh was not required to give *Miranda* warnings because Carter was not in custody, it noted he nonetheless did so, and found Carter voluntarily waived his rights before making his statements to the officers. To that end, the court noted that Detective Balogh read the constitutional waiver questions on the constitutional waiver form to Carter, each of which Carter initialed after indicating he was agreeing to waive that right, before talking to Carter about the allegations.

The court further quoted the exchange between Carter and Detective Balogh at the beginning of Carter's audio-taped statement. *See* Trial Court Opinion, 2/14/2022, at 60-61. It found this exchange "ma[de] clear that [Carter] was informed of his *Miranda* rights and understood the warnings both during and prior to the recording." *Id.* at 61. During the exchange, Carter also specifically stated that he was agreeing to speak with the officers and was "not under duress or anything like that." *Id.*

Carter challenges the trial court's conclusion that he voluntarily waived his constitutional rights before giving his statements, again alleging he was threatened by Detective Balogh and that he also was not read his rights until after the interview concluded. Again, Carter testified to this effect at the suppression hearing, and the trial court did not credit this testimony. Instead, despite Carter's allegations that

Detective Balogh's testimony was not credible, the trial court credited the detective's testimony that he thoroughly reviewed Carter's constitutional rights with him before taking any statements, and Carter waived those rights without any coercion. **See Yorgey**, 188 A.3d at 1198. Based on the above, we disagree with Carter that the trial court erred by denying his motion to suppress the statements he made to police.

We note that Carter also makes a bald allegation inside his first claim that the trial court should have suppressed the evidence from his cell phone because it was obtained without a search warrant. In the first place, this argument is not included in his statement of questions involved section, and it is waived for that reason alone. **See** Pa.R.A.P. 2116(a). In any event, the trial court found that Carter allowed the officers to look at his phone, handed over his phone and provided the passcode to open the private folder in Snapchat. He signed a consent to warrantless search form. The court concluded that the credible testimony of Detective Balogh and Officer Boone established that Carter's consent was voluntary and not the product of coercion. Again, Carter does not offer any convincing argument that the trial court erred in reaching this conclusion.

In his second claim, Carter alleges the trial court erred by denying his motion *in limine* seeking to preclude the Commonwealth from offering certain electronic evidence into evidence, including unidentified social media and text messages. He argues the electronic evidence was not properly authenticated. We agree with the trial court that this issue is waived.

The trial court found this issue was waived for three reasons. First, the trial court found Carter failed to identify with specificity in his Rule 1925 statement which items of evidence he argues the Commonwealth should have been precluded from admitting. **See** Trial Court Opinion, 2/14/2022, at 65, *citing* Pa.R.A.P. 1925(b)(4). Second, the trial court noted that Carter requested the court to hold the motion *in limine* in abeyance until trial, the trial court did so, and Carter never renewed the motion at trial. As such, the trial court never ruled on the motion. **See** Trial Court Opinion. 2/14/2022, at 65. And finally, the trial court pointed out, Carter did not object to the introduction of any social media evidence at trial. **See id.** at 65-66; **Commonwealth v. McGriff**, 160 A.3d 863, 866 (Pa. Super. 2017) (stating that a party must make a timely objection to the admission of evidence in order to preserve the issue for appellate review).

Carter does not address the issue of waiver at all in his brief to this Court. As such, he does not dispute that he did not specify which electronic evidence he alleged the Commonwealth should have been precluded from admitting in his Rule 1925 statement or otherwise. It also means he does not dispute that he failed to renew his motion *in limine* in front of the trial court or failed to object to the admission of the electronic evidence he purports to challenge at trial. He certainly does not point to the place in the record where either any such renewal or objection occurred, as is his clear burden to do. **See Commonwealth v. Baker,** 963 A.2d 495, 502 (Pa. Super. 2008) (finding the appellant's claim was waived when he did

not point to the location in the record where the claim was preserved, in violation of Pa.R.A.P. 2117(c) and 2119(e)).

Accordingly, Carter has failed to provide us with any reason to find that the trial court made any error in concluding Carter waived this issue and therefore, that he is entitled to any relief on this claim.

In his third claim, Carter alleges the trial court erred by failing to grant his motion for a continuance in order to allow his expert witness to examine his cell phone and its contents. He argues the court should have granted the motion as it was in the interests of justice and filed more than 48 hours before the start of trial. He further asserts the trial court's refusal to grant the continuance effectively deprived him of his right to counsel. This claim fails.

The decision of whether to deny a continuance is within the sound discretion of the trial court. *See Commonwealth v. Sandusky,* 77 A.3d 663, 671 (Pa. Super. 2013). "A myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. However, not every restriction on counsel's time or opportunity to investigate … violates a defendant's Sixth Amendment right to counsel." *Id.* (citations and brackets omitted). Therefore, the trial court exceeds its constitutional authority only when it exercises its discretion to deny a continuance on the basis of an "unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay." *Id.* at 671-672 (citation omitted).

Moreover, our Rules of Criminal Procedure provide that a trial court may grant a continuance in the "interests of justice." *See* Pa.R.Crim. P. 106(A). "A motion for continuance on behalf of the defendant shall be made not later than 48 hours before the time set for the proceeding." Pa.R.Crim.P. 106(D).

Here, the trial court found it had not abused its discretion in denying the motion for a continuance Carter filed on the Friday before trial was set to begin. The court noted that prior to this continuance motion, the trial had already been continued numerous times due to previous defense motions filed on September 20, 2019, October 24, 2019 and January 6, 2020.

The court also noted it specifically referenced the January 6, 2020 continuance motion at the June 9, 2020 hearing on Carter's omnibus pretrial motions, and that the January continuance had been granted because of the issue with the cell phone and yet, "absolutely nothing has happened from that point to today." N.T. Omnibus Motion Hearing, 6/9/2020, at 8. The court recounted that defense counsel stated the defense had finally hired an expert the day before and agreed to resolve the issue. The court continued:

> The defense raised the issue of digital discovery in *January* and *June* of 2020. Defense counsel indicated they had hired an expert on *June 8, 2020*. Despite the unambiguous instructions of this court at the Omnibus Hearing in June, arrangements were not made for Sperber to look at the phone until the afternoon of Tuesday, *September 22, 2020*, six days before the scheduled trial date. Although the Commonwealth had offered to set up a meeting for the defense expert to review the phone on Monday, September 21st, the earliest the defense could meet was on Tuesday September 22nd after Yarnall had been refused entry by the Sheriff due to COVID protocols on September 17th. After Sperber voluntarily left the meeting on Tuesday, the defense did not raise the

issue that they were unable to access the phone until Friday when accompanied by the final motion seeking a continuance.

During the meeting, Sperber was given access to [two software programs], and [Detective Balogh's supervisor, who was at the September 22nd meeting] testified that Sperber would have been able to view the file with these programs. Notably, this is not a case with voluminous digital discovery. The instant case involved only two relevant photographs. In addition, the defense had been aware that the Commonwealth was unwilling to release the cell phone for *months* before Sperber's visit. If time to continue to view the images was the issue, it is undisputed that no one from the District Attorney's office asked Sperber to leave before he was ready. During the meeting itself, Yarnall was in contact with the defense counsel and notified him of the issues he believed Sperber was having.

As we said at the hearing on [Carter's] final motion for continuance: "[T]here is no question in the court's mind that [Carter] has had more than ample opportunity to get whatever digital discovery they sought, okay. And if necessary, to seek the appropriate court interventions." N.T. Motions Hearing, 9/28/[20]20, at 131. As a result, this court did not exercise its discretion to deny the final requested continuance on the basis of "unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay." Instead, the motion for continuance was properly denied as [Carter] failed to avail himself of the many opportunities provided to obtain the discovery he sought and to avail himself of the court's assistance, if needed, in a timely fashion.

Trial Court Opinion, 2/14/2022, at 52-53 (emphasis in original).

Carter does nothing in his brief to challenge the court's finding that he failed to make timely and reasonable efforts to have a defense expert examine the cell phone and relevant electronic evidence. Carter agreed to have his cell phone analyzed on October 22, 2018, and the Commonwealth filed informations against him in July 2019. He was well aware there were two photos at issue on the cell phone. Yet, he does not offer any explanation as to why he did not hire an expert to examine the phone until June 8, 2020, and then did not arrange to have such an

examination occur until days before trial, on September 17, despite multiple requests by the Commonwealth for the expert's name and repeated offers to make arrangements for any such expert to view the phone.

Instead, Carter broadly "contends that the trial [c]ourt's explanation does not denote a careful consideration of the matter. The decision reflects a myopic insistence upon expeditiousness in the face of [his] request." Appellant's Brief at 55. We disagree, and conclude that the trial court did not abuse its discretion in denying the continuance motion. No relief is due.

Next, Carter argues the trial court erred by denying his motion for a jury view of the alleged crime scenes, including the school bus. He baldly asserts there were security cameras "placed throughout the school," which would have recorded the abuse. Appellant's Brief at 55-56. He summarily concludes the jury view "would have been helpful to [the jury] in determining any material, factual issue in the case" and to its duty to discern the credibility of witnesses. *Id.* We agree with the trial court that this claim is waived.

The trial court explained:

At the hearing on [Carter's] omnibus motion, defense counsel asked this court to hold its ruling in abeyance until the defense had an opportunity to review the video and photographs taken by the Commonwealth of various locations at [Pittston Area High School]. [*See*] N.T. Omnibus Hearing, 6/9/2020, at 28. He indicated that he may be satisfied with the photos and video of the premises he received from the Commonwealth at the hearing. [*See id.*] Because [Carter] did not raise this issue again at any point, this court presumed that he was satisfied with the discovery provided by the Commonwealth and thus the issue is waived.

Trial Court Opinion, 2/14/2022, at 64.

Again, Carter does not address, much less dispute, this finding of waiver or the fact that the trial court never ruled on his motion because he did not renew it before the trial court. Even if the issue were not waived for this reason, which it is, we would also find the issue was waived because of Carter's failure to meaningfully develop the issue. *See* Pa.R.A.P. 302(a) (stating that issues not raised in the trial court are waived and may not be raised for the first time on appeal); ***Commonwealth v. Love***, 896 A.2d 1276, 1287 (Pa. Super. 2006) (stating that arguments that are not sufficiently developed are waived). No relief is due.

In his fifth claim, Carter argues the court erred and abused its discretion in imposing his sentence and by finding he was an SVP. This claim fails.

Carter begins his argument with an assertion that the trial court abused its discretion by sentencing him to 84 to 168 months of imprisonment because that sentence is excessive for a variety of reasons. However, as the Commonwealth points out, this claim is waived because Carter did not include the requisite Pa.R.A.P. 2119(f) statement in his brief and the Commonwealth explicitly objects to this omission. ***See Commonwealth v. Griffin***, 149 A.3d 349. 353 (Pa. Super. 2016) (stating that when challenging a discretionary aspect of sentencing, an appellant must include a statement pursuant to Pa.R.A.P. 2119(f), and if the Commonwealth objects to the appellant's failure to do so, the sentencing claim is waived for purposes of appellate review).

Carter also claims the trial court erred in determining he is an SVP. Specifically, he makes a series of bald allegations: the trial court erred by applying

Subchapter I of SORNA II to this case as that violated the *ex post facto* and due process clause of both the state and federal constitutions; the definition of "mental abnormality" is unconstitutionally vague; there was not clear and convincing evidence that he has any such "mental abnormality"; the expert's SVP report was improper as it was not based on the Static 99-R risk assessment and the expert did not interview Carter; and the trial court's order that Carter be assessed for SVP status was untimely and Carter was not provided the assessment in a timely manner. These claims fail.

As an initial matter, Carter's claims are minimally developed, often amounting to no more than summary assertions, and are arguably waived for that reason. ***See Love***, 896 A.2d at 1287. His final claim, having to do with the timing of the assessment order and the receipt of the assessment report, was not one of the 31 allegations of error included in his Pa.R.A.P. 1925(b) statement, and it is therefore waived for that reason. ***See Commonwealth v. Lord***, 719 A.2d 306, 309 (Pa. 1998). Similarly, as the Commonwealth points out, Carter does not point to the place in the record where he objected to the definition of "mental abnormality" as unconstitutionally vague before the trial court, and that claim is waived for that reason. ***See Baker,*** 963 A.2d at 502.

His other assertions are without merit. First, Carter claims the trial court erred by applying Subchapter I of SORNA II to him. However, as the trial court repeatedly noted in its opinion, Carter committed his offenses after December 20, 2012, and therefore Subchapter H is the subchapter that is applicable to him, and the one the

trial court applied. **See** 42 P.a. C.S.A. § 9799.11(c) (providing that Subchapter H applies to offenses committed on or after December 2012). Despite the clarity provided by the trial court regarding this issue, Carter continues to maintain the trial court found him to be an SVP pursuant to Subchapter I. Because this claim continues to be "based on incorrect premises," Commonwealth's Brief at 31, it affords Carter no relief.

He also claims there was insufficient evidence for the trial court to find he was an SVP. This claim is waived, and in any event, meritless.

In order to determine if a defendant is an SVP, the trial court orders an assessment to be done by the Sexual Offender Assessment Board ("SOAB"). **See** 42 Pa.C.S.A. § 9799.24(a); **Commonwealth v. Hollingshead**, 111 A.3d 186, 189 (Pa. Super. 2015). At a hearing prior to sentencing, the Commonwealth must prove by clear and convincing evidence that the defendant has a mental abnormality or personality disorder that makes them likely to engage in predatory sexually violent offenses. **See** 42 Pa. C.S.A. § 9799.24(e), § 9799.12; **Hollingshead**, 1111 A.3d at 189.

Carter's entire argument regarding this sufficiency claim is that "the record falls short of 'clear and convincing evidence[.]' [I]ndeed there is no competent evidence that (a) [Carter] suffers from any cognizable 'mental abnormality or personality disorder,' or if he does, that (b) such abnormality 'makes [Carter] likely to engage in predatory sexually violent offenses.'" Appellant's Brief at 61 (citations

and unnecessary parenthesis omitted). Carter's failure to offer any more than these bald assertions renders his claim waived. *See Love*, 896 A.2d at 1287.

Certainly, these bald assertions do nothing to address the trial court's thorough recitation of the substantial evidence the Commonwealth's expert presented at the SVP hearing, which the court found clearly amounted to clear and convincing evidence that Carter is an SVP. The court explained:

> The Commonwealth presented the testimony of [SOAB board member] Paula Brust ("Brust") who was admitted without objection as an expert. While conducting her evaluation, Brust reviewed the SOAB investigator report, the non-response of the defense attorney, the criminal informations, police criminal complaints and affidavits as specifically set forth in her report, the Exeter Township police report, the Luzerne County District Attorney's police report, the interview with [Carter] conducted by [Detective] Balogh and [Officer] Boone, the preliminary hearing and the indicated child protect[ive] service investigation reports.

> Brust spoke in detail regarding the statutory factors that she considered in making her assessment. … She discussed the fact that [Carter's] offenses involved multiple minor victims and that he played games that normalized and sexualized his behavior and groomed the victims. She said that he frequently discussed penis sizes with the victims, asked for explicit photographs, had victims masturbate into their hands and push it into other victims' faces, had the victims pull down other victims' pants so [he] could see their penises. She also testified that he made one of the victims perform oral sex on him during a truth or dare game. Brust further discussed the importance of the fact that [Carter] was in a position of trust with the victims which he altered in order to satisfy his own sexual behaviors.

> Brust testified that [Carter] met the criteria set forth in the DSM-5 for mental abnormality; other specified paraphilic disorder. Regarding the likelihood for reoffending, she testified that [Carter] has a sexually deviant pathway for offending. She testified that paraphilia is characterized by ongoing sexual urges and sexual interest behaviors involving nonconsenting persons. She said that [Carter] has an internal drive to sexually assault these minors over a lengthy period of time. Brust said his other specified paraphilia disorder will cause him to

- 25 -

experience an internal drive towards sexually offending and his disorder predisposes him towards committing sexual crimes. Further, she testified within a reasonable degree of professional certainty that [Carter] met the definition for predatory behavior. Also within a reasonable degree of professional certainty, Brust testified that [Carter] met the statutory criteria to be classified as an SVP.

Trial Court Opinion, 2/14/2022, at 82-83 (citations to notes of testimony omitted).

The record supports the court's summary of the testimony. Given this testimony, we can discern no error in the court's conclusion that the Commonwealth established by clear and convincing evidence that Carter is an SVP. *See* *Hollingshead*, 1111 A.3d at 189 (stating that a reviewing court will affirm an SVP designation if it is able to conclude the trial court found clear and convincing evidence that the defendant is an SVP). Carter's undeveloped assertions to the contrary do not convince us otherwise.

We briefly address Carter's claim that the trial court improperly accepted Brust's evaluation report because she did not interview Carter and because she did not use the Static 99-R risk assessment. As for the interview, Brust testified she attempted to contact the defense several times about an interview, but when she got no response, she conducted the assessment without doing an interview. Once she learned that Carter wished to be interviewed, she did interview him, and subsequently filed an addendum to her report. *See* N.T. 6/3/2021, at 10. She testified an interview is not necessary to do an SVP assessment, and the assessment is often done without interviewing the defendant. *See id.* at 12. As for the Static 99-R risk assessment, Brust explicitly testified that this is an instrument used for parole board risk assessments, and not for SVP assessments. *See id.* at 31-34.

- 26 -

Based on Brust's testimony, we agree with the trial court that this claim is without merit.

Finally, Carter includes a claim in his statement of questions involved section that he is entitled to relief on the basis of the cumulative effect of the trial court's errors. As we have concluded that the trial court did not err, this claim, like all of his other claims, warrants no relief. **See Commonwealth v. Tedford**, 960 A.2d 1, 56 (Pa. 2008) (citation omitted) ("[N]o number of failed claims may collectively warrant relief if they fail to do so individually.").

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/10/2023